## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Case No. 24-146

---

KEN FYE,

Defendant – Appellant,

vs.

MICHAEL HOWARD,

Plaintiff – Appellee.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA
Case No.: 3:22-CV-00064-MMD-CSD

---

### APPELLANT'S OPENING BRIEF

---

WESLEY K. DUNCAN
Sparks City Attorney
Nevada State Bar No.: 12362

MARIAH NORTHINGTON
Senior Assistant City Attorney
Nevada State Bar No.: 14247

P.O. Box 857
Sparks, Nevada 89431
(775) 353-2324
AttyCivilDiv@cityofsparks.us

Attorneys for Defendant – Appellant

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................... 1

II.    JURISDICTIONAL STATEMENT ...................................... 1

   A.    BASIS FOR THE DISTRICT COURT'S AND THIS COURT'S JURISDICTION ............................................... 1

   B.    FILING DATES ESTABLISHING TIMELINESS OF APPEAL ... 2

   C.    APPEALABILITY OF THE DISTRICT COURT'S ORDER ........ 2

III.   STATEMENT OF ISSUES PRESENTED FOR REVIEW ................. 3

IV.   STATEMENT OF THE CASE ............................................. 3

   A.    STATEMENT OF FACTS ................................................ 3

   B.    PROCEDURAL HISTORY ............................................ 11

V.     SUMMARY OF THE ARGUMENT ................................ 13

VI.   STANDARDS OF REVIEW ............................................. 14

   A.    SUMMARY JUDGMENT STANDARD OF REVIEW .............. 14

   B.    QUALIFIED IMMUNITY STANDARD OF REVIEW .............. 16

VII.  ARGUMENT ................................................................... 19

   A.    PLAINTIFF-APPELLEE'S CLAIM FOR EXCESSIVE FORCE FAILS AS A MATTER OF LAW ................................. 19

       1.    The severity of the crimes at issue ................................. 24

       2.    Whether the suspect posed an immediate threat to the safety of the officers or others ....................................... 25

       3.    Whether the suspect was actively resisting arrest or attempting to evade arrest by flight ............................... 25

   B.    THE DISTRICT COURT'S CREATION OF A GENUINE DISPUTE OF A MATERIAL FACT BASED UPON PLAINTIFF'S COMPLAINT ALLEGATIONS WAS INSUFFICIENT TO WARRANT DENIAL OF SUMMARY JUDGMENT ................. 26

   C.    AT A MINIMUM, DETECTIVE FYE IS ENTITLED TO QUALIFIED IMMUNITY ........................................... 32

VIII. CONCLUSION ................................................................... 36

# TABLE OF AUTHORITIES

## CASES

*Adcock v. Chrysler Corp.*, 166 F.3d 1290 (9th Cir. 1999) .......................14

*Ames v. King County*, 846 F.3d 340 (9th Cir. 2017) .................................3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).............................. 15, 16, 28

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ................................................18

*Baker v. City of SeaTac*, 994 F. Supp. 2d 1148 (W.D. Wash. 2014) .....................18

*Bey v. Reed*, 2019 WL 2515464 (D. Colo. June 18, 2019)....................................35

*Chapman v. Rudd Paint & Varnish Co.,* 409 F.2d 635 (9th Cir. 1969) .......... 16, 28

*City of Tahlequah v. Bond*, 595 U.S. 9 (2021)................................................. 18, 33

*Conlon v. United States*, 474 F.3d 616 (9th Cir. 2007) .................................. 10, 31

*D.C. v. Wesby*, 583 U.S. 48 (2018)........................................................17

*Dedmon v. Roe*, 49 F. App'x 718 (9th Cir. 2002)....................................25

*Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001)...............................20

*Est. of Anderson v. Marsh*, 985 F.3d 726 (9th Cir. 2021) ........................27

*Est. of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998 (9th Cir. 2017)........20

*Forrester v. City of San Diego*, 25 F.3d 804 (9th Cir. 1994).................................21

*Foster v. City of Indio*, 908 F.3d 1204 (9th Cir. 2018)...........................................28

*George v. Morris*, 736 F.3d 829 (9th Cir. 2013) ....................................25

*Graham v. Connor*, 490 U.S. 386 (1989) .................................................... 19, 21, 36

*Gregory v. County of Maui*, 523 F.3d 1103 (9th Cir. 2008)..................................21

*Griggs v. Brewer*, 841 F.3d 308 (5th Cir. 2016)........................................35

*Groves v. City of Reno*, 2015 WL 5350099 (D. Nev. Sept. 14, 2015) ...................21

*Hunter v. Bryant*, 502 U.S. 224 (1991)........................................................32

*Jones v. Blanas*, 393 F.3d 918 (9th Cir. 2004) .......................................... 28, 30, 31

*Kitchens v. Pierce*, 565 F. App'x 590 (9th Cir. 2014)...............................30

*Lowry v. City of San Diego*, 858 F.3d 1248 (9th Cir. 2017)..................................20

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990)................................................16

*Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992) ...........................................18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ..............15

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ...............................................................2

*Mnyandu v. County of Los Angeles*, 765 F.App'x 398 (9th Cir. 2019)............ 10, 31

*Mullenix v. Luna*, 577 U.S. 7 (2015) .....................................................................33

*O'Doan v. Sanford*, 991 F.3d 1027 (9th Cir. 2021).............................. 16, 17, 19, 32

*Orr v. Bank of Am., NT & SA*, 285 F.3d 764 (9th Cir. 2002) ..................................15

*Pearson v. Callahan*, 555 U.S. 223 (2009)................................................. 18, 32, 34

*People v. McMakin*, 8 Cal. 547 (1857) ...................................................................25

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021)........................................ 17, 33, 34

*Rosenbaum v. Washoe County*, 663 F.3d 1071 (9th Cir. 2011) ...............................18

*Sandoval v. County of San Diego*, 985 F.3d 657 (9th Cir. 2021) ...........................33

*Saucier v. Katz*, 533 U.S. 194 (2001) .....................................................................34

*Scott v. Harris*, 550 U.S. 372 (2007) ......................................................................15

*Segura v. Jones*, 259 F.App'x 95, 104 (10th Cir. 2007)..........................................35

*Shafer v. County of Santa Barbara*, 868 F.3d 1110 (9th Cir. 2017)................. 32, 34

*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978 (9th Cir. 2007) .........................28

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539 (9th Cir. 1989)
........................................................................................................................ 28, 31

*Voigt v. Savell*, 70 F.3d 1552 (9th Cir. 1995) .........................................................14

*Weiner v. San Diego County*, 210 F.3d 1025 (9th Cir. 2000)..................................14

*Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010)..................................................15

## STATUTES

NRS 199.280(1) ......................................................................................................26

NRS 202.360.........................................................................................................3, 10

NRS 453.336 .............................................................................................................3

**OTHER AUTHORITIES**

Dictionary.com...............................................................................................8

https://www.merriam-webster.com/dictionary/periodontal......................................8

https://www.who.int/news-room/fact-sheets/detail/sugars-and-dental-caries..........8

**RULES**

Federal Rules of Appellate Procedure 4(a)(1)(A)........................................................2

Federal Rules of Civil Procedure 36(a)(3)................................................. 10, 31

Federal Rule of Civil Procedure 36(a)(3) ................................................. 10, 29, 35

Federal Rule of Civil Procedure 56(a) ...................................................................14

Federal Rule of Civil Procedure 56(c) ...................................................................14

Federal Rule of Civil Procedure 56(e) ...................................................................16

**CONSTITUTIONAL PROVISIONS**

28 U.S.C. § 2107(a) ........................................................................................2

42 U.S.C. § 1983 .............................................................................................16

## I.    INTRODUCTION

This matter involves a felony arrest effectuated upon Plaintiff-Appellee by several police officers, including Defendant-Appellant Detective Ken Fye.  At the time of the arrest, the officers were aware that (1) Plaintiff was a multi-convicted felon, (2) he was wanted by the Division of Parole and Probation for absconding from parole, (3) he had an active felony warrant out of Lyon County for Attempted Grand Larceny of a Motor Vehicle and Vehicle Burglary, (4) he had an active misdemeanor warrant out of Reno Municipal Court for Failure to Appear, and (5) the Sparks Police Department had outstanding probable cause to arrest him for felony Possession of a Stolen Motor Vehicle. ER-072—075 at ¶5-6.  As the officers approached Plaintiff's vehicle, they observed Plaintiff to have a firearm in his left hand, and to be making furtive movements with that hand. *Id*. at ¶10-17.  Detective Fye is the officer who effectuated the arrest by physically pulling Plaintiff from the vehicle and putting him in handcuffs. *Id*. at ¶17-22.  Detective Fye utilized a minimal and wholly reasonable amount of force in arresting Plaintiff.

## II.    JURISDICTIONAL STATEMENT

### A.    BASIS FOR THE DISTRICT COURT'S AND THIS COURT'S JURISDICTION

Plaintiff brought this action alleging a violation of 42 U.S.C. § 1983. The district court and this Court have jurisdiction over this action pursuant to 28 U.S.C. § 1331, § 1343, and § 1367.

## B.   FILING DATES ESTABLISHING TIMELINESS OF APPEAL

The district court's Order was entered on December 19, 2023, wherein the district court denied Detective Fye's Motion for Summary Judgment, denied Detective Fye's Motion to Dismiss for Failure to Prosecute, and granted Detective Bailey's Motion for Summary Judgment.[1] ER-003-011. The Notice of Appeal was timely filed on December 28, 2023, pursuant to 28 U.S.C. § 2107(a) and FRAP 4(a)(1)(A).

## C.   APPEALABILITY OF THE DISTRICT COURT'S ORDER

This Court has jurisdiction over this appeal of a denial of qualified immunity pursuant to 28 U.S.C. § 1291.  The Supreme Court has recognized that a district court's denial of qualified immunity "is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).  This Court "may adjudicate 'legal' interlocutory appeals" and "review a denial of qualified immunity where a defendant argues … that the facts, even when considered in the light most favorable to the plaintiff, show no violation of a constitutional right,

---

[1] Defendant Travis Bailey is employed by the Washoe County Sheriff's Office—a separate law enforcement agency than that of Defendant Ken Fye, who is employed by the Sparks Police Department. ER-072—075; ER-079—080.  The allegations against Defendant Fye averred excessive force whereas the allegations against Defendant Bailey averred a failure to intervene. ER-003—011.

2

or no violation of a right that is clearly established in law." *Ames v. King County*, 846 F.3d 340, 347 (9th Cir. 2017).

## III.   STATEMENT OF ISSUES PRESENTED FOR REVIEW

Whether Defendant-Appellant Detective Ken Fye is entitled to qualified immunity on an excessive force claim for pulling Plaintiff-Appellee from his vehicle and arresting Plaintiff where Plaintiff, a multi-convicted felon, was wanted by the Division of Parole and Probation for absconding from parole, had two active warrants out for his arrest, was wanted by the Sparks Police Department for felony Possession of a Stolen Motor Vehicle, and undisputedly had a firearm in his hand as the officers approached his vehicle to conduct this felony arrest.

## IV.   STATEMENT OF THE CASE

### A.   STATEMENT OF FACTS

Plaintiff was arrested by Detective Fye on April 26, 2021, for the following charges: (1) Prohibited Person in Possession of a Firearm, a violation of NRS 202.360, a category B felony, (2) Possession of a Controlled Substance, a violation of NRS 453.336, a category E felony, and (3) Possession of Drug Paraphernalia, a violation of NRS 453.566, a misdemeanor. ER-072—075 at ¶35. Plaintiff was additionally booked on a Parole Violation and a Failure to Appear warrant. *Id*.

On April 26, 2021, Detective Fye was a Sparks Police Department Detective assigned to the Repeat Offender Program ("ROP"). *Id*. at ¶3. Prior to Detective Fye's encounter with Plaintiff on that day, Detective Fye was aware that (1) Plaintiff was a

multi-convicted felon, (2) he was wanted by the Division of Parole and Probation for absconding from parole, (3) he had an active felony warrant out of Lyon County for Attempted Grand Larceny of a Motor Vehicle and Vehicle Burglary, (4) he had an active misdemeanor warrant out of Reno Municipal Court for Failure to Appear, and (5) the Sparks Police Department had outstanding probable cause to arrest Plaintiff for felony Possession of a Stolen Motor Vehicle. *Id.* at ¶5-6.

On April 26, 2021, Detective Fye and several other ROP Detectives, including Detective Travis Bailey of the Washoe County Sheriff's Office, were attempting to locate Plaintiff for the various outstanding matters mentioned above. *Id.* at ¶7. The ROP Detectives were informed that Plaintiff was a passenger in a green van in the area of York Way and Rock Boulevard in Sparks, Nevada. *Id.* at ¶8. The ROP Detectives located the van in the area of Rock Boulevard and Commerce Way in Sparks and observed the van pull into the Rainbow Market gas station. *Id.* at ¶9. Detectives Fye and Bailey approached the passenger side of the green van and, as they approached, they issued commands to Plaintiff to keep his hands in the air where they could see them. *Id.* at ¶10-11. Plaintiff did not comply. *Id.* at ¶12. Instead, from the rear passenger window of the van, Detective Fye observed Plaintiff reaching his left hand behind him towards the back seat, and observed that Plaintiff had a firearm in his left hand. *Id.* at ¶13-14. At one point, Plaintiff's left hand, which was holding the firearm,

4

was reaching towards the back seat and was out of Detective Fye's line of vision. *Id*. at ¶14.

Detective Fye then opened the rear sliding passenger door of the van and observed Plaintiff toss the firearm behind him onto the back seat floorboard. *Id*. at ¶15; *see also* ER-077. During this time, Detectives Fye and Bailey continued to order Plaintiff to put his hands up and Plaintiff continued to fail to comply. *Id*. at ¶16. After dropping the firearm on the back seat floorboard, Plaintiff finally complied and raised his hands. *Id*. at ¶17. Detective Bailey then opened the front passenger door of the van, and Detective Fye held onto Plaintiff's raised right wrist, helped Plaintiff exit the vehicle, and commanded Plaintiff to get onto the ground. *Id*. at ¶17-18. Plaintiff complied with this order and laid down on his stomach on the ground. *Id*. at ¶20. Plaintiff was not seat belted at the time he exited the vehicle. *Id*. at ¶21. While Plaintiff was lying on the ground on his stomach, Detective Fye placed him in handcuffs. *Id*. at ¶22.

Detective Fye did not slam Plaintiff's face onto the asphalt. *Id*. at ¶23. Detective Fye did not use any level of force to place Plaintiff on the ground—Plaintiff himself got onto the ground in response to Detective Fye's verbal commands. *Id*. at ¶24. Plaintiff did not sustain any injuries during this arrest and did not complain of any pain or injuries on scene. *Id*. at ¶25-26. Detective Fye's account is wholly corroborated by Detective Bailey. ER-079—080.

After being detained, Plaintiff advised Detective Fye that the firearm, as well as methamphetamine and a methamphetamine pipe, were the only illegal items in the van. ER-072—075 at ¶28-29. The ROP Detectives located a backpack, wherein there was a small clear plastic bag with a clear crystalline substance which was consistent with methamphetamine and a clear glass pipe with burnt residue. *Id*. at ¶30. Additionally, the ROP Detectives located the black Glock .40 handgun, loaded with 8 rounds of hollow point ammunition, on the back seat floorboard. *Id*. at ¶31-32.

Plaintiff was then transported from the scene to the Washoe County Detention Facility by Sparks Police Officer Ian Hamm-Carl. *Id*. at ¶34; *see also* ER-082—083 at ¶5. Officer Hamm-Carl likewise states that Plaintiff did not have any visible injuries. ER-082—083 at ¶4. Plaintiff did not complain of any pain or injuries to officers on scene, during transport, or during the booking process at the Washoe County Detention Facility. *Id*. at ¶6. Officer Hamm-Carl's body camera footage depicts Plaintiff and does not show any injuries or outward indications of any pain or injuries. *See* ER-086; ER-082—083 at ¶10; ER-088—089 at ¶4. The interior fleet camera footage from Officer Hamm-Carl's patrol vehicle depicts Plaintiff and does not show any injuries or outward indications of any pain or injuries. *See* ER-090; ER-082—083 at ¶11; ER-088—089 at ¶5. In fact, the interior fleet camera footage shows Plaintiff speaking with and kissing his girlfriend—who was also arrested during this interaction and transported with Plaintiff to the jail—multiple times for several minutes. ER-090 at

19:45—33:15. Further, Plaintiff's booking photograph depicts no injuries. ER-085; ER-082—083 at ¶8.

Plaintiff was clearly willing and able to complain regarding any injuries or discomfort, as evidenced by the fact that, while still on scene and in the back of Officer Hamm-Carl's vehicle, Plaintiff yelled that his handcuffs were too tight. ER-090 at 19:20. His handcuffs were adjusted to a level of comfort. *Id.* Plaintiff made no such complaints or commands about any injuries to his face and/or shoulder.

During the booking process at the Washoe County Detention Facility, Plaintiff underwent medical intake screening by medical professionals, during which time Plaintiff denied any injuries or trauma. ER-082—083 at ¶7. In the April 26, 2021 Receiving Screening, conducted by Emergency Medical Technician Evan Foley, the medical professional marked "no" for any "illness or injuries," indicated that Plaintiff "denied illness, injury, infection, bleeding & trauma," and that Plaintiff had "recent use of illegal drugs," in that he utilizes methamphetamine daily, with the last use being that day. ER-116—120.[2] In the April 26, 2021 Physical Assessment, conducted by Charge Registered Nurse Michael Buehler, the medical professional marked "no" for any "new injuries," and indicated that Plaintiff had "No trauma to head, face or neck," no "mouth

---

[2] The Sparks City Attorney's Office has redacted portions of Plaintiff's Naphcare, Inc. medical records which contain sensitive and irrelevant information.

pain," "Good to fair dentition," "Grossly normal strength and function of all extremities," and "No injuries or infections on extremities." ER-121—125.

On May 17, 2021, 21 days after the arrest, Plaintiff, for the first time, reported tooth pain. ER-144. On May 20, 2021, Plaintiff was seen by a dentist. ER-145—147. Contrary to Plaintiff's allegations in this matter, the damage to his teeth was actually determined to be caused by decay and/or cavities—not trauma or injuries—as discussed below. In the medical records, Plaintiff indicated that the pain was coming from the "back lower left," and he was "unable to determine" the onset of the tooth pain. ER-145. On May 23, 2021, a dental exam of Plaintiff's teeth revealed "Carries [sic]" and "Bone Loss" on Teeth 17 and 19, which are located on the lower left. ER-150—155. The dentist noted "gross decay perio involved." ER-154—155. Both teeth were removed. ER-152.

According to the World Health Organization, dental caries is "also known as tooth decay or dental cavities." https://www.who.int/news-room/fact-sheets/detail/sugars-and-dental-caries; *see also* Dictionary.com (dental caries are "cavity formation in teeth caused by bacteria."). According to Merriam-Webster's Dictionary, "periodontal" means "surrounding a tooth." https://www.merriam-webster.com/dictionary/periodontal.

On May 25, 2021, Plaintiff reported that he needed a third tooth removed. ER-160. On June 1, 2021, Plaintiff claimed to the medical staff that "when arrested I was

slammed on my face and shoulder out of a van it broke 3 teeth and mest up my right shoulder real bad ive had 2 teeth pulled waitin on the thered realy need x-rays on shoulder thank u." ER-162. <u>This is the first complaint of right shoulder pain, 36 days after the arrest</u>. ER-107. On June 5, 2021, Plaintiff was seen by a medical professional regarding "Musculoskeletal Pain/Strain." ER-167—168. Plaintiff's complaint was of right shoulder pain. *Id*. Plaintiff indicated a history of right shoulder pain related to a "fall at work." *Id*. There is no mention in this document of any use of force during Plaintiff's arrest.

On September 12, 2021, Plaintiff was seen by a dentist in regard to "loose tooth upper left," with a "0" on the pain scale. ER-194—199. The dental exam revealed "Bone Loss" and "Perio Hopeless" on Tooth 16. *Id*. The dentist noted "decay and perio involved." *Id*. The tooth was removed. *Id*.

Plaintiff has admitted that the subject medical records are a true and accurate depiction of his medical records while detained at the Washoe County Detention Facility related to the arrest at issue in this case.[3] ER-218—224 at Request No. 31; ER-215—216.

_____

[3] Unanswered requests for admission, or untimely and deficient responses to the
(footnote continued)

On October 1, 2021, in Second Judicial District Court case number CR21-1380, Plaintiff was convicted of Being a Felon in Possession of a Firearm, a violation of NRS 202.360, a category B felony, stemming from this arrest, and was sentenced to 28 to 72 months in the Nevada Department of Corrections, to run consecutive to the sentence imposed in CR12-0692. ER-226—234.

Furthermore, the above-described facts have all been deemed admitted by Plaintiff, as he failed to timely respond to Detective Fye's Requests for Admissions.[4] Therefore, Plaintiff has admitted that his face was not slammed into the asphalt by Detective Fye, that Detective Fye did not cause him great bodily harm, and that the officers did not cause any injury to him when he was arrested. ER-218—224 at Request No. 8, 10, 16, 23; ER-215—216. Plaintiff has admitted that there was a firearm in the vehicle at the time of his arrest, that he knew about the firearm, and that he is prohibited

---

same, are deemed admitted under Fed. R. Civ. P. 36(a)(3) and may be relied on as the basis for granting summary judgment. *See Mnyandu v. County of Los Angeles*, 765 F.App'x 398, 398 (9th Cir. 2019); *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007). On January 26, 2023, Defendant Ken Fye served Plaintiff with the following discovery requests: Requests for Admission (Set One), Interrogatories (Set One), and Request for Production of Documents (Set One). ER-215—216. The deadline for Plaintiff's responses to these discovery requests was February 27, 2023. *Id*. Plaintiff failed to provide timely responses to these discovery requests, which by operation of Federal Rule of Civil Procedure 36(a)(3) deems them admitted. *Id*.

[4] *See* Rule 36(a)(3); *Mnyandu*, 765 F.App'x 398; *Conlon*, 474 F.3d at 621.

by Nevada and Federal law from being in possession of a firearm. *Id*. at Request No. 11, 12, 13, 14. Plaintiff has further admitted that he was under the influence of and in possession of methamphetamine at the time of the subject arrest. *Id*. at Request No. 17, 18. Plaintiff has admitted that the booking photograph shows no injury to his face. *Id*. at Request No. 21, 22, 23. Plaintiff has admitted that he was screened by a medical professional on the date of the arrest and he did not tell the medical professional that he had any injuries related to the arrest, that the medical professional did not observe any trauma to his head, face, or neck and did not indicate that Plaintiff was in need of any medical treatment. *Id*. at Request No. 24, 25, 26, 27, 28. Plaintiff has also admitted that he was informed by medical staff at the Washoe County Detention Facility that the issues with his teeth were related to decay. *Id*. at Request No. 19, 20. Further, Plaintiff admitted that his alleged injury to his right shoulder is related to a prior fall at work. *Id*. at Request No. 30. Lastly, Plaintiff has admitted that the allegations in this lawsuit did not happen and were fabricated to harass these officers, and that he filed this lawsuit in retaliation of this arrest which led to him being imprisoned in the Nevada Department of Corrections. *Id*. at Request No. 15, 16.

## B.    PROCEDURAL HISTORY

On February 3, 2022, Plaintiff filed his initial Complaint in proper person. On March 7, 2022, Plaintiff filed the operative First Amended Complaint. On May 12, 2022, the Court issued its Order adopting Magistrate Judge Denney's Report and

Recommendation, establishing that Plaintiff's Complaint alleges a single claim of Fourth Amendment Excessive Force against Defendant Ken Fye. On October 10, 2022, attorney Thomas Gibson filed a Notice of Appearance on behalf of Plaintiff. On December 20, 2022, Mr. Gibson, filed a Motion to Withdraw as Attorney of Record, indicating that he had "retained an excessive force expert who opined there lacked sufficient proof of the Defendants' wrongdoing against the Plaintiff."

On September 13, 2022, Detective Fye produced his Initial Disclosures and on January 24, 2023, Detective Fye produced his Supplemental Disclosures (Set One). ER-246; ER-251—252. On January 26, 2023, Detective Fye served Plaintiff with the following discovery requests: Requests for Admission (Set One), Interrogatories (Set One), and Request for Production of Documents (Set One). *Id*.

Plaintiff failed to provide or conduct any discovery whatsoever—no disclosures, no written discovery requests, and no depositions. ER-248; ER-251—252. Discovery closed on March 17, 2023. On March 20, 2023, Detective Fye filed a Motion to Dismiss for Failure to Prosecute based upon Plaintiff's failure to provide or conduct any discovery, or to respond to any of Detective Fye's discovery. ER-245—252. As of the date of filing the Reply in Support of the Motion to Dismiss for Failure to Prosecute on March 29, 2023, Detective Fye had not received any responses to any of the discovery requests. ER-243—244.

On April 12, 2023, Detective Fye filed a dispositive Motion for Summary

Judgment, arguing that Plaintiff's excessive force claim fails as a matter of law and at a minimum Detective Fye is entitled to qualified immunity because (1) there was no violation of a constitutional right, and (2) any possible violation was not clearly established at the time of the arrest. ER-053—235. Also on April 12, 2023, Defendant Bailey filed a dispositive Motion for Summary Judgment. ER-003.

On December 19, 2023, the district court issued its Order wherein it granted Detective Bailey's Motion, but denied both of Detective Fye's Motions. ER-003—011. In denying Detective Fye's Motions, the district court ruled that Plaintiff had adequately prosecuted his excessive force claim (even though he conducted no discovery and failed to respond to all discovery propounded against him) because he timely responded to Detective Fye's Motions. ER-003. The district court further ruled that, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Detective Fye used excessive force in effectuating the arrest. ER-008. However, the district court failed to evaluate the second prong of the qualified immunity analysis as to whether any such right was clearly established at the time of the underlying arrest. *Id*. This appeal followed.

## V.     SUMMARY OF THE ARGUMENT

Defendant-Appellant Detective Ken Fye is entitled to qualified immunity on the subject excessive force claim for pulling Plaintiff-Appellee from his vehicle and arresting Plaintiff, where Plaintiff—a multi-convicted felon—was wanted by the

Division of Parole and Probation for absconding from parole, had two active warrants out for his arrest (one active felony warrant and one active misdemeanor warrant), was wanted by the Sparks Police Department for felony Possession of a Stolen Motor Vehicle, and undisputedly had a firearm in his hand as the officers approached his vehicle to conduct this felony arrest.

## VI. <u>STANDARDS OF REVIEW</u>

### A. SUMMARY JUDGMENT STANDARD OF REVIEW

A district court's decision to grant summary judgment is reviewed de novo. *Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir. 2000). In conducting a de novo review, this Court does not defer to the lower court's ruling but independently reconsiders the matter as if no decision had been rendered below. *Voigt v. Savell*, 70 F.3d 1552, 1564 (9th Cir. 1995). This Court's "review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c)." *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999).

Federal Rule of Civil Procedure Rule 56(a) provides the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(e) further provides that "[i]f a party fails to properly support an assertion of fact … the court may … consider the fact undisputed for purposes of the motion." "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v.*

14

*Harris*, 550 U.S. 372, 380 (2007) (citation omitted). The "opponent must do more than simply show that there is some metaphysical doubt as to the material facts" because "the mere existence of some alleged factual dispute between the parties will not defeat … summary judgment." *Id*. (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts …." *Id*.; *see also Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010).

The "purpose of summary judgment is to 'pierce the pleadings and **to assess the proof** in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis added) (citation omitted). "**[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading**, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (emphasis added) (cleaned up). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment [and f]actual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248.

**"A trial court can only consider admissible evidence in ruling on a motion for summary judgment."** *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (emphasis added). To defeat summary judgment, the adverse party must

15

rely upon <u>actual evidence</u>, not mere allegations or arguments by an attorney. *Chapman v. Rudd Paint & Varnish Co.,* 409 F.2d 635, 643 (9th Cir. 1969). "Rule 56(e) provides that judgment 'shall be entered' against the nonmoving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'" *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (citation omitted). **"The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."** *Id*. (emphasis added) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[T]he plaintiff could not rest on his allegations of a conspiracy to get to a jury without 'any significant probative evidence tending to support the complaint.'"). "In the absence of material factual disputes, the objective reasonableness of a police officer's conduct is a pure question of law." *O'Doan v. Sanford*, 991 F.3d 1027, 1035 (9th Cir. 2021) (cleaned up).

### B. QUALIFIED IMMUNITY STANDARD OF REVIEW

"Officers sued under 42 U.S.C. § 1983 may be immune from civil liability under the doctrine of qualified immunity." *O'Doan*, 991 F.3d at 1035–36. To determine whether the officers are entitled to qualified immunity, "we consider (1) whether there has been a violation of a constitutional right; and (2) whether that

right was clearly established at the time of the officer's alleged misconduct."[5] *Id*. at 1036 (citation omitted). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right…[i]n other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. (citation omitted). "The precedent must be clear enough that **every reasonable official** would interpret it to establish **the particular rule** the plaintiff seeks to apply." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (emphasis added).

Although qualified immunity involves a two-step analysis, courts may exercise their discretion to resolve a case only on the second ground when no clearly established law shows the officers' conduct was unconstitutional. *Id*. "[T]o show a violation of clearly established law, [the plaintiff] must identify a case that put [the officer] on notice that his specific conduct was unlawful," and this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5–6 (2021) (citation omitted).

---

[5] As discussed below, the district court cited the appropriate two-prong qualified immunity analysis, but failed to even address whether any alleged constitutional right was clearly established at the time of Detective Fye's alleged use of force. ER-010.

"We have repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. (cleaned up).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id*. (citation omitted). "The linchpin of qualified immunity is the reasonableness of the official's conduct." *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1075 (9th Cir. 2011) (per curiam). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Baker v. City of SeaTac*, 994 F. Supp. 2d 1148, 1167 (W.D. Wash. 2014) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).

The Ninth Circuit has stressed the courts' task when deciding the issue of qualified immunity "is not to serve as a police oversight board or to second-guess

officers' real-time decisions from the standpoint of perfect hindsight, but to ask whether the officers violated clearly established law." *O'Doan*, 991 F.3d at 1036. "The question, then, is whether clearly established law prohibited [Defendants] from using the degree of force that [they] did in the specific circumstances that the officers confronted." *Id*. at 1036.

## VII.    ARGUMENT

### A.    PLAINTIFF-APPELLEE'S CLAIM FOR EXCESSIVE FORCE FAILS AS A MATTER OF LAW

The admissible evidence presented in this case establishes that Plaintiff-Appellee's claim for excessive force fails as a matter of law. The Fourth Amendment does not prohibit a police officer's use of reasonable force during an arrest, it only prohibits the use of excessive force. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396–97.

"[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (cleaned up). When assessing the nature and quality of a given intrusion, a court must "first assess the quantum of force used to arrest [the individual] by considering the type and amount of force inflicted." *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001) (cleaned up).

Some of the factors that are considered when deciding if there was excessive force are: "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Lowry v. City of San Diego*, 858 F.3d 1248, 1257 (9th Cir. 2017) (citation omitted). "These factors are non-exhaustive," and "[c]ourts still must 'examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'" *Est. of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998, 1006 (9th Cir. 2017) (citation omitted). "[O]fficers need not employ the least intrusive

means available[,] so long as they act within a range of reasonable conduct." *Id*. (citation omitted).

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted); *see Gregory v. County of Maui*, 523 F.3d 1103, 1106–07 (9th Cir. 2008) (finding the use of force was reasonable in subduing a trespasser who had assaulted one person, was acting in a bizarre manner, was reportedly under the influence of drugs, and had failed to comply with orders to drop a pen, when officers used a physical control hold on the subject's neck and head to restrain him and handcuffed the subject, even though the subject later died of a heart attack); *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994) (finding the use of pain compliance techniques on non-resisting abortion protestors that resulted in complaints of bruises, a pinched nerve and a broken wrist, was objectively reasonable). "The Court must account for the reality that police officers make quick decisions in high-stress situations." *Groves v. City of Reno*, 2015 WL 5350099, at *5 (D. Nev. Sept. 14, 2015).

In this case, any force utilized by Detective Fye was entirely reasonable. While effectuating the arrest in this case, Detective Fye merely utilized verbal commands and

held onto Plaintiff's right wrist.[6] ER-072—075 at ¶16-21.  According to Detective Fye, Plaintiff was not pulled out of the vehicle, and he was not thrown or slammed onto the asphalt. *Id*. at ¶17-24.  Plaintiff laid himself down on the ground. *Id*.  Detective Fye's Affidavit is corroborated by (1) Washoe County Detective Bailey's Declaration, (2) Sparks Police Officer Hamm-Carl's subsequent observations, (3) the video footage from Officer Hamm-Carl's body camera and interior vehicle camera, (4) Plaintiff's booking photograph, and (5) Plaintiff's medical records.  Detective Bailey's account confirms Detective Fye's statements. ER-079—080.   Officer Hamm-Carl did not observe any injuries, and Plaintiff made no complaints to Officer Hamm-Carl on scene, during transport, or during the booking process at the Washoe County Detention Facility. ER-082—083 at ¶4-6.  The video footage and booking photograph depict Plaintiff after he was arrested by Detective Fye, and do not depict any injuries or outward indications of any pain. *See* ER-085; ER-086; ER-090.

Plaintiff underwent medical screening and treatment while at the Washoe County Detention Facility.  During the booking process on April 26, 2021, Plaintiff underwent two separate physical screenings at two different times by two separate

---

[6] As noted above, these facts were deemed admitted based upon Plaintiff's failure to timely respond to Detective Fye's Requests for Admissions within the required time frame, or even by the end the discovery cutoff.

medical professionals, and both medical professionals noted that Plaintiff had no injuries or bleeding or trauma or pain. ER-116—125.  The medical records establish that Plaintiff did not report any tooth pain until, at the very earliest, May 17, 2021—21 days after the subject arrest. ER-144.  Plaintiff did have three teeth removed during his time at the Washoe County Detention Facility—all due to tooth decay and/or dental cavities. ER-145—155; ER-194—199.  There is no medical evidence that Plaintiff's teeth sustained any trauma due to any impact or injury.  In fact, on May 20, 2021, when Plaintiff was initially seen by the dentist, Plaintiff indicated he was "unable to determine" the onset of the tooth pain. ER-145.

The medical records establish that Plaintiff did not report any shoulder pain until, at the very earliest, June 1, 2021—36 days after the subject arrest. ER-107; ER-162—168.  During Plaintiff's Musculoskeletal Pain/Strain examination on June 5, 2021, Plaintiff made no mention of any force used during his arrest, and indicated that he had a history of right shoulder pain related to a "fall at work." ER-167—168.

Moreover, Plaintiff's version of the arrest is illogical and implausible.  Plaintiff's story is that he was sitting in the front passenger seat of the van, was pulled out by his right wrist, that his feet were still in the van tangled up in the seatbelt, and that somehow his right shoulder and left side of his face were slammed onto the asphalt.  The allegations are physically unbelievable, are not supported by any probative evidence, and are blatantly contradicted by all the admissible evidentiary materials.

Further, although the admissible evidence establishes that Detective Fye utilized only verbal commands and minimal physical force to effectuate this arrest, even considering the allegations in the complaint—which have been wholly negated by Plaintiff's deemed admissions and failure to participate in discovery—Detective Fye would have been legally justified in utilizing significantly more force, given that he was aware that (1) Plaintiff was a multi-convicted felon, (2) he was wanted by the Division of Parole and Probation for absconding from parole, (3) he had an active felony warrant out of Lyon County for Attempted Grand Larceny of a Motor Vehicle and Vehicle Burglary, (4) he had an active misdemeanor warrant out of Reno Municipal Court for Failure to Appear, and (5) the Sparks Police Department had outstanding probable cause to arrest Plaintiff for Possession of a Stolen Motor Vehicle. ER-072—075 at ¶5-6. Further, during the encounter, Plaintiff had a firearm in his hand (despite being a prohibited person), was initially failing to comply with verbal commands to keep his hands in the air, and was making furtive movements with said firearm. *Id*. at ¶10-14; *see also* ER-077.

1.    The severity of the crimes at issue

The ROP Detectives were attempting to locate Plaintiff for multiple outstanding criminal matters, including absconding from parole supervision, an active felony warrant out of Lyon County for two felony crimes, an active misdemeanor warrant out of Reno Municipal Court for failure to appear, and outstanding probable cause for a

felony crime. Additionally, upon approach to Plaintiff's vehicle, Plaintiff committed additional crimes, including but not limited to Prohibited Person in Possession of a Firearm, a violation of NRS 202.360, a category B felony, for which he was convicted in this case. Therefore, Plaintiff had multiple pending severe felony crimes and committed an additional felony level firearms related crime in the presence of the officers.

2. <u>Whether the suspect posed an immediate threat to the safety of the officers or others</u>

At the time of Plaintiff's arrest, Detective Fye was aware of Plaintiff's extensive felony-level criminal history. Further, Plaintiff was actively holding and making furtive movements with a firearm as the Detectives were issuing commands, which Plaintiff was ignoring. "If the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013). "[D]rawing a weapon generally constitutes rebuttable evidence of an intention to use it." *Dedmon v. Roe*, 49 F. App'x 718, 719 (9th Cir. 2002) (citing *People v. McMakin*, 8 Cal. 547, 549 (1857).

3. <u>Whether the suspect was actively resisting arrest or attempting to evade arrest by flight</u>

Plaintiff did not comply with the Detectives' commands to keep his hands up where they could see them until after he had tossed his firearm. Instead of complying,

Plaintiff was making furtive movements while holding a firearm. It was only after Plaintiff tossed the firearm behind him that he complied with the Detectives' commands. During the time, Plaintiff was resisting his arrest while in possession of a firearm, which constitutes a violation of NRS 199.280(1), a category C felony.

Plaintiff was the subject of a Repeat Offender Program investigation due to multiple outstanding criminal matters. Despite these various serious matters, and despite being in active possession of a firearm at the time of his arrest, Detective Fye utilized minimal force in effectuating Plaintiff's arrest by merely holding onto Plaintiff's right wrist while issuing verbal commands. Given that Plaintiff's crimes were of varying degrees of severity, he was making furtive movements with a firearm that clearly posed a threat to the Detectives, and was not complying with the Detectives commands while he was in possession of that firearm, Detective Fye would have been permitted to utilize significantly more force than he did. Thus, Detective Fye's conduct was entirely reasonable under the circumstances, and summary judgment must be granted.

**B.  THE DISTRICT COURT'S CREATION OF A GENUINE DISPUTE OF A MATERIAL FACT BASED UPON PLAINTIFF'S COMPLAINT ALLEGATIONS WAS INSUFFICIENT TO WARRANT DENIAL OF SUMMARY JUDGMENT**

There was no evidence of any kind presented by Plaintiff in the summary judgment briefing to dispute the corroborated account of Detective Fye, admissible or otherwise—no deposition testimony, no affidavits, no video. Discovery in this case

closed on March 17, 2023. Plaintiff failed to conduct or provide <u>any</u> discovery whatsoever and failed to provide any timely discovery responses, which was the basis of Detective Fye's March 20, 2023 Motion to Dismiss for Failure to Prosecute, which was denied by the district court. ER-245—252. The only evidence attached to Plaintiff's Opposition to the underlying summary judgment motion consisted of excerpts from Plaintiff's medical records, various black and white images, a portion of Detective Fye's police report (all of which were provided to Plaintiff by Detective Fye via discovery), and various pleadings. ER-020—052. Of note, Plaintiff's complaint was not attached nor relied upon in his Opposition. There was no evidence provided that differed from or even disputed Detective Fye's Affidavit—or the admitted Requests for Admissions—which were corroborated by all the other evidence.

The only aspect of Plaintiff's Opposition to the underlying summary judgment that differed from Detective Fye's version of the events were his "bare allegations"[7]— as opposed to actual evidence—which generally cannot be utilized to fend off summary

---

[7] "Although we may not review on interlocutory appeal claims that a plaintiff has presented insufficient evidence, we have held that we may review claims that a plaintiff has presented *no* evidence such that his arguments about the illegality of a defendant's conduct are premised on 'bare allegation[s],'" or where "a plaintiff's version of the facts is 'blatantly contradicted by the record, so that no reasonable jury could believe it.'" *Est. of Anderson v. Marsh*, 985 F.3d 726, 731 n.3 (9th Cir. 2021) (citations omitted).

judgment. *Anderson*, 477 U.S. at 256; *Chapman*, 409 F.2d at 643. District courts are required to examine "the actual quantum and quality of proof necessary to support liability at trial," and "[m]ere submission of affidavits opposing summary judgment is not enough; the court must consider whether the evidence presented in the affidavits is of sufficient caliber and quantity to support a jury verdict for the nonmovant." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (citation and quotation marks omitted). The district court cannot rely upon "bare allegation alone, without any evidence in the record," to find that there is a genuine dispute. *Foster v. City of Indio*, 908 F.3d 1204, 1217–18 (9th Cir. 2018) (per curiam). Additionally, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." *Scott*, 550 U.S. at 380. "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citation omitted).

In this case, the district court relied upon *Jones v. Blanas*, 393 F.3d 918 (9th Cir. 2004) in order to utilize Plaintiff's allegations in his complaint to fend off summary judgment—but Plaintiff did not rely upon or cite to his complaint in his Opposition. Regardless, relying upon *Jones*, the district court held that it could utilize the allegations in the complaint as evidence and made the finding that "there is a genuine

dispute of material fact as to what type and amount of force was used by Fye and thus whether such force was excessive under the circumstances" because Plaintiff had alleged that "Fye grabbed his wrist, pulled him from the vehicle, an slammed him and his face to the ground while his feet were still in the van tangled in his seatbelt." ER-005—006.

However, while some courts have considered pro se verified complaints as evidence in opposition to a motion for summary judgment, this case is distinguishable from *Jones* and the cases cited within *Jones* because Plaintiff had ample time to participate in discovery and utterly failed to do so, resulting in admissions pursuant to Rule 36(a)(3) that Detective Fye did not, in fact, use excessive force. ER-245—252; ER-218—224; ER-215—216. The district court cannot create an issue of fact based upon a complaint to fend off summary judgment where the Plaintiff wholly neglected his duty to participate in discovery throughout the entire discovery period and admitted key facts that entirely negate the accusations in his complaint.

Although misplaced, the district court's *Jones*-based analysis nevertheless should have resulted in a finding of qualified immunity in favor of Detective Fye, because even under Plaintiff's uncorroborated and unsubstantiated version of the incident as alleged in his complaint(s) and Opposition, the use of force as alleged by Plaintiff would have been patently reasonable, given Plaintiff's known criminal history, absconder status, and the fact that he had a firearm in his hand during the

officers' approach. At a minimum, as described below and ignored by the district court, Detective Fye was entitled to qualified immunity as there is no clearly established law stating that this alleged level of force constituted a clear constitutional violation.

Further, Judge Wallace has articulated the dangers and difficulties of this evidentiary allowance under *Jones* for pro se litigants in his dissent in *Kitchens v. Pierce*, 565 F. App'x 590, 591–93 (9th Cir. 2014):

> **Under our precedents, a party cannot establish a disputed question of material fact, and thereby avoid summary judgment, by making a "bare assertion" that is devoid of "any legal or factual support."**
>
> This rule applies to pro se litigants, like Kitchens, just as much as it applies to any other party. Our decision in *Jones v. Blanas*, 393 F.3d 918 (9th Cir.2004), is not to the contrary. In *Jones*, we held that when a litigant appears pro se, the court "must consider as evidence ... all of [his] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [he] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Id*. at 922–23 (emphasis added). **It is important to recognize that this is a narrow exception to the general rule that a nonmoving party may survive summary judgment only if he presents evidence of "sufficient caliber and quantity" to create a genuine issue of material fact.**
>
> ...
>
> A pro se litigant may assert any number of things in his pleadings, "verified" or not. He may assert that Freemasons run the country, that the moon is made of green cheese, or that all Cretans are liars. But, because he would lack "personal knowledge" of the truth of any of those assertions, we would not treat them as evidence sufficient to defeat a summary judgment motion. In the same way, Kitchens, as a detainee who was briefly held in the Fresno County Jail, lacks any personal knowledge of that jail's bureaucratic hierarchy or the

"authority" invested in its various officials. Therefore, his assertions as to this matter cannot be regarded as evidence of sufficient "caliber and quantity" to create a genuine issue of material fact.

(citations omitted) (emphasis added). While Judge Wallace wrote in dissent, he cited to binding precedent in the Ninth Circuit that observed "[m]ere submission of affidavits opposing summary judgment is not enough; **the court must consider whether the evidence presented in the affidavits is of sufficient caliber and quantity to support a jury verdict for the nonmovant.**" *United Steelworkers of Am.*, 865 F.2d at 1542 (emphasis added). Where "evidence that is 'merely colorable'"—such as unsupported claims in a complaint—such evidence "is not sufficient to present a genuine issue as to a material fact." *Id.* In this case, the district court made no findings as to the quality of proof or caliber of the allegations contained in Plaintiff's complaint. *See generally* ER X–Y. This is error under *United Steelworkers*.

Furthermore, the district court wholly failed to address the fact that Plaintiff failed to timely respond to Detective Fye's Requests for Admissions. *See generally* ER-003—011. Unanswered requests for admission, or untimely and deficient responses to the same, **are deemed admitted** under Fed. R. Civ. P. 36(a)(3) and may be relied on as the basis for granting summary judgment. *See Mnyandu*, 765 F. App'x at 398; *Conlon*, 474 F.3d at 621.

The district court's reliance upon *Jones* to create a dispute of fact on behalf of Plaintiff should not be affirmed, especially given that (1) this "affidavit" was not

31

presented by Plaintiff as evidence, (2) all the allegations are blatantly contradicted by the record, (3) the district court did not analyze the "caliber and quantity" of allegations in the complaint as evidence, and (4) all of Detective Fye's Requests for Admission were deemed admitted and entirely negate Plaintiff's unsubstantiated excessive force allegations.

## C.  AT A MINIMUM, DETECTIVE FYE IS ENTITLED TO QUALIFIED IMMUNITY

"Qualified immunity is an immunity from suit rather than a mere defense to liability." *Pearson*, 555 U.S. at 231 (citation and quotation marks omitted). "**[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation**." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (emphasis added).  This Court has stressed the courts' task when deciding the issue of qualified immunity "is not to serve as a police oversight board or to second-guess officers' real-time decisions from the standpoint of perfect hindsight, but to ask whether the officers violated clearly established law." *O'Doan*, 991 F.3d at 1036.

"**It is the plaintiff who bears the burden of showing that the rights allegedly violated were clearly established**." *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (internal quotation marks and citation omitted) (emphasis added).  A plaintiff must provide a case that demonstrates the unconstitutionality of the action in light of the specific context of the case, and failure to do so requires a grant

of qualified immunity. *Id.*; *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015); *Rivas-Villegas*, 595 U.S. at 6; *City of Tahlequah*, 595 U.S. at 12–13.

In this case, <u>Plaintiff failed to provide any case law</u> establishing that any of Detective Fye's conduct—either proven by evidence or merely alleged—violated clearly established law. *See generally* ER-020—052. In fact, the case law establishes the opposite. Therefore, Plaintiff's failure to provide any case law alone warrants a grant of qualified immunity.

Additionally, although the district court correctly stated the two-prong test for a court's qualified immunity analysis, in which "[courts] consider (1) whether the evidence viewed in the light most favorable to the plaintiff is sufficient to show a violation of a constitutional right and (2) whether that right was 'clearly established at the time of the violation," <u>the district court only analyzed the first prong of the test and failed to analyze the second prong of the test</u>—as to whether the constitutional right was clearly established—and this failure is critical. ER-010 (citing *Sandoval v. County of San Diego*, 985 F.3d 657, 671 (9th Cir. 2021)).

An examination of analogous case law establishes that Detective Fye is entitled to qualified immunity because the use of force as alleged by Plaintiff was not constitutionally unreasonable in the light of clearly established law. In *Saucier*, the plaintiff was a protestor at an event where Vice President Albert Gore, Jr. was speaking, and was seated in the section for the general public. *Saucier v. Katz*, 533 U.S.

33

194, 198 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 231 (2009). As the Vice President began speaking, Saucier walked to the barrier and placed his banner on the other side. *Id*. The officers then grabbed Saucier from behind and rushed him from the area. *Id*. "Each officer had one of [Saucier's] arms, half-walking, half-dragging him, with his feet 'barely touching the ground.'" *Id*. The officers took Saucier to a nearby van, and Saucier was "shoved or thrown inside," causing him to fall to the floor of the van. *Id*. The Supreme Court found that the officers were entitled to qualified immunity on the excessive force claim. *Id*.

The Supreme Court also found that an officer was entitled to qualified immunity on an excessive force claim where the officer "placed his left knee on the left side of Cortesluna's back…raised both of Cortesluna's arms up behind his back…for no more than eight seconds before standing up while continuing to hold Cortesluna's arms." *Cortesluna*, 595 U.S. at 4–5. This Court has held that a deputy was entitled to qualified immunity on an excessive force claim when a misdemeanant refused verbal commands and the deputy responded by grabbing the subject's arm and then took the subject to the ground via a leg sweep maneuver. *Shafer*, 868 F.3d at 1118.

This Court is in accord with other circuits when faced with similar fact patterns. The Fifth Circuit held, in part, that an officer's conduct "was not constitutionally unreasonable in the light of clearly established law" when the officer told the suspect to put his hands behind his back, the suspect then lurched to one side while saying

"no," and the officer "immediately placed [the suspect] in a choke hold, swept his legs out from under him, and body-slammed him onto the nearby grass." *Griggs v. Brewer*, 841 F.3d 308, 313–14 (5th Cir. 2016).  Similarly, the Tenth Circuit held that the lower court erred in denying qualified immunity on an excessive force claim where the officer pulled the plaintiff's arms behind her back, handcuffed her, and pushed her up against the wall. *Segura v. Jones*, 259 F.App'x 95, 104 (10th Cir. 2007).  The United States District Court in the District of Colorado held that the amount of force used by the officers was objectively reasonable and the officers were entitled to qualified immunity where the plaintiff, a passenger in a vehicle, exited the vehicle and asked the officer why her husband, the driver, was being arrested, and four officers responded by grabbing her, slamming her against the car's backdoor window, and handcuffing her. *Bey v. Reed*, 2019 WL 2515464, at *2, *7 (D. Colo. June 18, 2019).

Likewise, in this case, Detective Fye is entitled to qualified immunity.  There was no violation of any constitutional rights, as established above.  Additionally, there is no clearly established law to put Detective Fye on notice that his conduct—even under Plaintiff's version of events (which again should not be adopted given his deemed admissions pursuant to Rule 36(a)(3)) —was unconstitutional.  In fact, the case law establishes the opposite—"[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."

*Graham*, 490 U.S. at 396.  Effectuating an arrest comes with the requirement that the subject be physically detained; therefore, some level of force is necessary.  Holding the Plaintiff's wrist and commanding him to lay on the ground is clearly reasonable.  Or—as alleged by Plaintiff—forcibly removing Plaintiff from the vehicle wherein he had just brandished a firearm during a felony arrest and causing his face to hit the ground is clearly reasonable.  Thus, Detective Fye is entitled to qualified immunity.

## VIII.    <u>CONCLUSION</u>

Plaintiff's excessive force claim fails as a matter of law and Detective Fye is entitled to summary judgment.  There is no evidence of excessive force.  Additionally, at a minimum, Detective Fye is entitled to qualified immunity because he did not violate any clearly established constitutional rights.


DATED this 22nd day of May, 2024.

WESLEY K. DUNCAN
Sparks City Attorney

By:   <u>/s/ Mariah Northington</u>
MARIAH NORTHINGTON
Senior Assistant City Attorney
*Attorneys for Defendant - Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-146

I am the attorney or self-represented party.

**This brief contains** | 8,943 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Mariah Northington | **Date** | 05/22/2024
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*