**No. 24-146**
_____

*In the*
# United States Court of Appeals
*for the*
# Ninth Circuit
_____

MICHAEL HOWARD,
*Plaintiff-Appellee*,

– v. –

KEN FYE,
*Defendant-Appellant.*
_____

On Appeal from the United States District Court
for the District of Nevada
Case No. 3:22-cv-64, Hon. Miranda M. Du
_____

**ANSWERING BRIEF FOR PLAINTIFF-APPELLEE**
_____

PAUL W. HUGHES
SARAH P. HOGARTH
CONNOR J. SUOZZO
*McDermott Will & Emery LLP*
*500 North Capitol Street NW*
*Washington, DC 20001*
*(202) 756-8000*

*Counsel for Plaintiff-Appellee*

## STATEMENT REGARDING ORAL ARGUMENT

The Plaintiff-Appellee respectfully requests that the Court hear oral argument. Oral argument would aid the Court in its disposition of this interlocutory appeal, which involves issues of collateral-order jurisdiction and qualified immunity.

# TABLE OF CONTENTS

Table of Authorities ................................................................... iii

Introduction ............................................................................... 1

Jurisdiction ............................................................................... 3

Issue Statement ........................................................................ 4

Statement of the Case ............................................................... 4

    A.   Factual background ....................................................... 4

    B.   Procedural background ............................................... 10

Summary of Argument ............................................................ 18

Argument ................................................................................ 21

I.    The Court lacks jurisdiction to consider this appeal, which depends entirely on Detective Fye's evidentiary challenges............. 22

    A.   Detective Fye impermissibly construes the evidence against Mr. Howard. ......................................................... 22

    B.   The district court's ruling on the requests for admission is outside the scope of this appeal, and in any event, that ruling was well within its discretion. ......................................... 27

II.   Detective Fye is not entitled to qualified immunity............................ 35

    A.   Detective Fye used excessive force during the arrest in violation of the Fourth Amendment. ........................................... 36

    B.   Mr. Howard's right to be free from Detective Fye's excessive force was clearly established........................................ 41

    C.   Detective Fye's arguments are meritless..................................... 46

Conclusion .............................................................................. 52

# TABLE OF AUTHORITIES

## Cases

*Adams v. Speers*,
473 F.3d 989 (9th Cir. 2007) ...................................................... 23, 27, 30

*Advanced Bldg. & Fabrication, Inc. v. California Highway Patrol*,
918 F.3d 654 (9th Cir. 2019) .................................................. 27

*Alicea v. Thomas*,
815 F.3d 283 (7th Cir. 2016) ........................................... 45, 46

*Alston v. Read*,
663 F.3d 1094 (9th Cir. 2011) ................................................ 2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................. 24

*Bagley v. Guillen*,
90 F.4th 799 (5th Cir. 2024) ................................................... 45

*Bell v. Williams*,
2024 WL 3449144 (9th Cir. July 18, 2024) ............................ 44

*Blaisdell v. Frappiea*,
729 F.3d 1237 (9th Cir. 2013) ............................................... 35

*Borzeka v. Heckler*,
739 F.2d 444 (9th Cir. 1984) ................................................. 34

*Brown v. HomeStreet Bank*,
2021 WL 5277097 (9th Cir. Nov. 12, 2021) .......................... 34

*Bryan v. MacPherson*,
630 F.3d 805 (9th Cir. 2010) ................................................ 40

*Cnty. of Los Angeles, Calif. v. Mendez*,
581 U.S. 420 (2017) .............................................................. 36

*Conlon v. United States*,
474 F.3d 616 (9th Cir. 2007) ...................................19, 28, 30, 31, 32, 33

*Coursen v. A.H. Robins Co.*,
764 F.2d 1329 (9th Cir. 1985) ............................................... 29

## Cases—continued

*DePaul Indus. v. Miller*,
  14 F.4th 1021 (9th Cir. 2021)............................................................ 1, 48

*Estate of Anderson v. Marsh*,
  985 F.3d 726 (9th Cir. 2021) ....................................18, 23, 24, 25, 27, 35

*Fontana v. Haskin*,
  262 F.3d 871 (9th Cir. 2001) .................................................................. 41

*Forrester v. City of San Diego*,
  25 F.3d 804 (9th Cir. 1994) ................................................................... 47

*Foster v. City of Indio*,
  908 F.3d 1204 (9th Cir. 2018) .......................................................... 23, 24

*French v. United States*,
  416 F.2d 1149 (9th Cir. 1968) ............................................................... 33

*Friedman v. Live Nation Merch., Inc.*,
  833 F.3d 1180 (9th Cir. 2016) ............................................................... 32

*George v. Morris*,
  736 F.3d 829 (9th Cir. 2013) ...................................................... 23, 25, 51

*Giles v. Gen. Motors Acceptance Corp.*,
  494 F.3d 865 (9th Cir. 2007) ................................................................. 50

*Graham v. Connor*,
  490 U.S. 386 (1989) ...........................................................36, 37, 40, 41

*Green v. City & Cnty. of San Francisco*,
  751 F.3d 1039 (9th Cir. 2014) ............................................................... 40

*Gregory v. County of Maui*,
  523 F.3d 1103 (9th Cir. 2008) .......................................................... 47, 48

*Gutting v. Falstaff Brewing Corp.*,
  710 F.2d 1309 (8th Cir. 1983) ............................................................... 34

*Holmes v. Vill. of Hoffman Est.*,
  511 F.3d 673 (7th Cir. 2007) ................................................................. 45

*Hopkins v. Bonvicino*,
  573 F.3d 752 (9th Cir. 2009) ................................................................. 11

*Hungerford v. Greate Bay Casino Corp.*,
  517 A.2d 498 (N.J. Super. Ct. App. Div. 1986)........................................ 31

## Cases—continued

*Hyde v. City of Willcox*,
    23 F.4th 863 (9th Cir. 2022).................................................38, 39, 41, 43

*Hyde v. Willcox*,
    2021 WL 267868 (D. Ariz. Jan. 15, 2021)............................................. 43

*Jackson v. Dutra*,
    2023 WL 2064543 (9th Cir. Feb. 17, 2023)........................................... 44

*Johnson v. Bay Area Rapid Transit Dist.*,
    724 F.3d 1159 (9th Cir. 2013) ....................................................... 22, 35

*Johnson v. Jones*,
    515 U.S. 304 (1995) .......................................................................... 3, 27

*Jones v. Las Vegas Metro. Police Dep't*,
    873 F.3d 1123 (9th Cir. 2017) ................................................................ 44

*Kaiser Cement Corp. v. Fishbach & Moore, Inc.*,
    793 F.2d 1100 (9th Cir. 1986) ................................................................ 26

*LaPlante v. City of Battle Creek, Michigan*,
    30 F.4th 572 (6th Cir. 2022).................................................................. 45

*Lee v. Gregory*,
    363 F.3d 931 (9th Cir. 2004) ........................................................... 42, 43

*Lewis v. Caraballo*,
    98 F.4th 521 (4th Cir. 2024).................................................................. 39

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ............................................................ 6, 49

*Maddox on behalf of D.M. v. City of Sandpoint*,
    732 F. App'x 609 (9th Cir. 2018)...................................................... 25, 27

*Maldonado v. Morales*,
    556 F.3d 1037 (9th Cir. 2009) ............................................................... 36

*Mattos v. Agarano*,
    661 F.3d 433 (9th Cir. 2011) ................................................38, 39, 41, 44

*Moore v. Garnand*,
    2023 WL 6372972 (9th Cir. Sept. 29, 2023) ..................................... 25, 27

*Moosman v. Joseph P. Blitz, Inc.*,
    358 F.2d 686 (2d Cir. 1966)................................................................... 34

## Cases—continued

*Moss v. U.S. Secret Serv.,*
572 F.3d 962 (9th Cir. 2009) ................................................................. 23

*Mut. Fund Invs., Inc. v. Putnam Mgmt. Co.,*
553 F.2d 620 (9th Cir. 1977) ................................................................. 51

*Nicholson v. City of Los Angeles,*
935 F.3d 685 (9th Cir. 2019) ........................................................... 22, 23

*P.B. v. Koch,*
96 F.3d 1298 (9th Cir. 1996) ........................................................... 28, 29

*Palmer v. Sanderson,*
9 F.3d 1433 (9th Cir. 1993) ............................................................. 38, 43

*Pauluk v. Savage,*
836 F.3d 1117 (9th Cir. 2016) ......................................................... 22, 24

*Peck v. Montoya,*
51 F.4th 877 (9th Cir. 2022) ........................................................... 24, 25

*Perez v. Miami-Dade Cnty.,*
297 F.3d 1255 (11th Cir. 2002) ....................................................... 32, 33

*Plumhoff v. Rickard,*
572 U.S. 765 (2014) ............................................................................. 3

*Quraishi v. St. Charles Cnty., Missouri,*
986 F.3d 831 (8th Cir. 2021) ................................................................. 46

*Rivas-Villegas v. Cortesluna,*
595 U.S. 1 (2021) ................................................................................. 48

*Rosenbaum v. City of San Jose,*
2024 WL 3366493 (9th Cir. July 11, 2024) ..................................... 44, 48

*Sabbe v. Washington Cnty. Bd. of Commissioners,*
84 F.4th 807 (9th Cir. 2023) ................................................................. 37

*Sallenger v. Oakes,*
473 F.3d 731 (7th Cir. 2007) ................................................................. 39

*Sampson v. Cnty. of Los Angeles by & through Los Angeles
Cnty. Dep't of Child. & Fam. Servs.,*
974 F.3d 1012 (9th Cir. 2020) ............................................................... 42

**Cases—continued**

*Saucier v. Katz*,
    533 U.S. 194 (2001) ................................................................. 47

*Scott v. Harris*,
    550 U.S. 372 (2007) ................................................................. 49

*Seidner v. de Vries*,
    39 F.4th 591 (9th Cir. 2022)..................................................... 37

*Serrano v. Sanders*,
    2024 WL 2206344 (9th Cir. May 16, 2024)............................... 24

*Sialoi v. City of San Diego*,
    823 F.3d 1223 (9th Cir. 2016) ................................3, 28, 29, 35

*Smith v. City of Hemet*,
    394 F.3d 689 (9th Cir. 2005) ...................................... 37, 40, 41

*Smoak v. Hall*,
    460 F.3d 768 (6th Cir. 2006) .................................................... 45

*Stevens v. Rose*,
    298 F.3d 880 (9th Cir. 2002) .................................................... 23

*Taylor v. Barkes*,
    575 U.S. 822 (2015) ................................................................. 42

*Tennessee v. Garner*,
    471 U.S. 1 (1985) ..................................................................... 36

*Thomas v. Ponder*,
    611 F.3d 1144 (9th Cir. 2010) ................................................. 50

*Thompson v. Rahr*,
    885 F.3d 582 (9th Cir. 2018) .................................38, 39, 41, 44

*United States v. Petroff-Kline*,
    557 F.3d 285 (6th Cir. 2009) ...................................... 30, 33, 35

*Voigt v. Savell*,
    70 F.3d 1552 (9th Cir. 1995) .................................................... 48

*Voskanyan v. Upchurch*,
    2022 WL 4181664 (9th Cir. Sept. 13, 2022) ...................... 28, 29

*Wade v. Daniels*,
    36 F.4th 1318 (11th Cir. 2022)................................................. 45

**Cases—continued**

*Waid v. Cnty. of Lyon,*
    87 F.4th 383 (9th Cir. 2023) ............................................................ 42, 43

*White by White v. Pierce Cnty.,*
    797 F.2d 812 (9th Cir. 1986) ............................................................ 28

*Wilk v. Neven,*
    956 F.3d 1143 (9th Cir. 2020) ........................................................ 42, 50

*Zion v. Cnty. of Orange,*
    874 F.3d 1072 (9th Cir. 2017) ........................................................ 38, 39

**Statutes and Rules**

28 U.S.C.
    § 1291 ............................................................................................. 3, 22
    § 1331 ............................................................................................. 3
    § 1343 ............................................................................................. 3
    § 1367 ............................................................................................. 3
    § 1915(e)(2) .................................................................................... 10
    § 1915A ........................................................................................... 10

42 U.S.C. § 1983 ................................................................................... 3

Fed. R. Civ. P.
    36 ..................................................... 2, 13, 19, 28, 30, 31, 32, 33
    36(a)(3) ........................................................................................... 2
    36(b) ............................................................................................... 31
    41(b) ............................................................................................... 14

**Other Authorities**

Colin E. Flora, *It's A Trap! The Ethical Dark Side of Requests
    for Admission,* 8 St. Mary's J. Legal Mal. & Ethics 2 (2017) ................. 31

## INTRODUCTION

When Detective Ken Fye and other officers surrounded Michael Howard at a gas station to arrest him for a suspected non-violent offense, Mr. Howard peacefully surrendered. He raised both his hands and complied with the arrest, and at no point did he resist the officers. Yet Detective Fye grabbed him by the wrists, ripped him from his vehicle, and slammed his face into the pavement.

Mr. Howard filed an action against Detective Fye for using excessive force against him. At summary judgment, the district court denied Detective Fye's qualified-immunity defense. After meticulously discussing the evidence, the district court concluded that a reasonable jury could agree with Mr. Howard's version of the facts and that, on that version of the facts, Detective Fye's conduct violated Mr. Howard's clearly established Fourth Amendment right to be free from excessive force.

Detective Fye challenges that ruling only by disputing the facts and insisting that this Court "consider whether the evidence" is "sufficient" to support Mr. Howard's claim. Fye Br. 31. But where the district court rejects a qualified-immunity defense—as it did here—this Court "lack[s] jurisdiction" over an interlocutory appeal "challenging the sufficiency of the evidence." *DePaul Indus. v. Miller*, 14 F.4th 1021, 1026 (9th Cir. 2021) (quoting

*Alston v. Read*, 663 F.3d 1094, 1094 (9th Cir. 2011)). This appeal should therefore be dismissed outright.

Relying on an abuse of requests for admission (*see* Fed. R. Civ. P. 36), Detective Fye suggests that Mr. Howard—an incarcerated plaintiff who proceeded before the district court *pro se*—"admitted that the allegations in this lawsuit did not happen." Fye Br. 11. That incredible claim is false, the district court rejected it, and the question does not fall within the scope of this appeal. The basis for the suggestion is that Detective Fye sent Mr. Howard requests for admission asking him to deny everything he alleged in his verified amended complaint. Detective Fye then received Mr. Howard's response, but the thirty-day response deadline had passed. *See* Fed. R. Civ. P. 36(a)(3). What in fact occurred was that Mr. Howard responded immediately but inadvertently served the attorney for Detective Fye's co-defendant. As soon as he learned that Detective Fye had not received the response, he sent another copy to Detective Fye's attorney. The district court appropriately exercised its discretion to treat the matters as not admitted, and in any event, that question is not before this Court.

The overwhelming reliance on Mr. Howard's purported "admissions" is revealing. Detective Fye cannot prevail without them. When the evidence

2

is properly construed in Mr. Howard's favor, it becomes undeniable that Detective Fye violated his clearly established right under the Fourth Amendment to be free from excessive force during an arrest.

## JURISDICTION

Mr. Howard brought this action under 42 U.S.C. § 1983. The district court thus had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. Although orders determining that a defendant does not have qualified immunity are immediately appealable under 28 U.S.C. § 1291 and the collateral order doctrine (*Plumhoff v. Rickard*, 572 U.S. 765, 772 (2014)), this Court's jurisdiction over such interlocutory appeals is "limited to deciding only the question whether, taking all the facts in the light most favorable to the plaintiffs, the defendants are entitled to qualified immunity as a matter of law." *Sialoi v. City of San Diego*, 823 F.3d 1223, 1231 (9th Cir. 2016). The Court may not consider questions of "evidence sufficiency" or whether a fact dispute is "genuine." *Johnson v. Jones*, 515 U.S. 304, 314-316 (1995). As set forth in Part I, *infra*, this Court lacks jurisdiction over Detective Fye's appeal because it raises the very types of evidentiary disputes that are not cognizable on an interlocutory appeal of the denial of qualified immunity.

The district court entered its order denying Detective Fye's motion for summary judgment and granting Detective Bailey's motion for summary

3

judgment on December 19, 2023. ER-3–11. Detective Fye timely filed a notice of appeal on December 28, 2023. ER-253–254.

## ISSUE STATEMENT

1.      Whether this Court has jurisdiction to address Detective Ken Fye's argument regarding sufficiency of the evidence on an interlocutory appeal from an order denying qualified immunity.

2.      Whether the district court correctly held that, taking the evidence in the light most favorable to the plaintiff, Detective Fye is not entitled to qualified immunity because slamming a non-resisting arrestee's head into pavement is excessive force in violation of the Fourth Amendment.

## STATEMENT OF THE CASE

### A.    Factual background

On April 26, 2021, Michael Howard was riding in the front passenger seat of his girlfriend's van in Sparks, Nevada, when she pulled the vehicle into a gas station and stopped at the fuel pumps. ER-21, ER-73, ER-79.

Detectives from the Sparks Police Department had been following the van in unmarked cars with plans to arrest Mr. Howard. ER-21, ER-73. The grounds for the arrest are unclear —the officers cite their "aware[ness]" that he was wanted for failing to appear for parole and that he had two warrants

4

in other counties for non-violent crimes.[1] ER-72–73. The defendants also mention that an officer in the Sparks Police Department suspected that Mr. Howard possessed a stolen vehicle in Reno, Nevada, but they neither provide facts supporting probable cause nor aver that they were aware of such facts at the time of the arrest. ER-73.

After the van stopped at a fuel pump, the officers entered the gas station lot and surrounded the van. ER-21. Detectives Travis Bailey and Ken Fye approached the passenger side of the vehicle and ordered Mr. Howard to put his hands up. ER-79. Mr. Howard complied, and as the officers approached, his "hands were up and visible." ER-79. Detective Bailey then "ordered [him] to exit the vehicle." ER-79. "When [so] ordered," Mr. Howard began to "lower[] his left hand" towards the seat belt buckle to unbuckle it. ER-79 (describing Mr. Howard lowering his left hand "towards the left side of the passenger seat" around the "waistband" area). But "[w]hen Plaintiff lowered his left arm," Detective Bailey immediately ordered him to "put his hands up" again. ER-79.

From here, the parties' accounts diverge. According to the officers, they observed Mr. Howard "toss" a handgun "onto the backseat floorboard" behind him. ER-73–74, ER-79. According to Mr. Howard, "at no time" did

[1]   Mr. Howard had a warrant from Lyon County for attempted grand larceny of a motor vehicle and vehicle burglary, and a warrant from Reno Municipal Court for failure to appear. ER-72–73.

he touch the handgun (ER-21), which was already "on the floor in [the] back of the van" when the police arrived. ER-25; *see also* ER-21. "[W]hen told to get out of the van," he "dropped his left hand <u>only</u> to unbuckle [his] seat belt." ER-21; *accord* SER-54–56 (averring that he was "clearly compliant" throughout the arrest, he "surrendered peacefully," and the officers had "no reason" to use force against him); SER-14 ("I would of got out of the van if allowed to und[o] my seat belt."). And when told to raise his hands again, he did so immediately, leaving the seat belt secured. SER-54.

The parties agree that before the officers opened the passenger door, and before any force was used, Mr. Howard "complied with [their] orders and raised his hands." ER-79; *see also* ER-38, ER-74; SER-54. Detective Bailey then opened the passenger door where Mr. Howard was sitting. ER-79; *see also* ER-74. Mr. Howard "surrendered peacefully," his hands remaining raised. SER-54. It is undisputed that Detective Fye then "grabbed Plaintiff's wrists" and "removed him from the vehicle." ER-38, ER-74, ER-79; Fye Br. 5. It is also undisputed that Mr. Howard did not resist arrest at any point and continued to comply with all orders. ER-74, ER-79.

The parties dispute the manner of Detective Fye's removal of Mr. Howard from the vehicle. Mr. Howard's sworn testimony[2] recounts that

---

[2]   The allegations in Mr. Howard's verified amended complaint are evidence that may be considered at summary judgment. *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000).

6

while he was "still seat-belted," Detective Fye "grabb[ed him] by the wrist," "ripped" him from the vehicle, and "slamm[ed him] to the ground." SER-54–55. Mr. Howard's "face was slammed on the asphalt while [he] was still hanging from the locked seat-belt." SER-54.

Detective Fye denies slamming Mr. Howard on the ground. ER-74. His affidavit states that Mr. Howard was "no longer seat belted" during the removal.[3] ER-74. It further states that after removing Mr. Howard from the vehicle, Detective Fye commanded him to get on the ground, and Mr. Howard "complie[d]" by voluntarily lying on his stomach, where Detective Fye placed him in handcuffs. ER-74; *see also* ER-79 ("Plaintiff complied.").

The officers placed Mr. Howard in Officer Ian Carl-Hamm's patrol vehicle and transported him to a detention facility. ER-75. Video footage of the vehicle's interior shows Mr. Howard "grimace in pain" when entering and sitting down, and at "certain points in the footage." ER-7, ER-90. The black-and-white footage also shows the left side of Mr. Howard's face swelling. ER-50, ER-90. His booking photograph depicts red bruising and swelling in the same area of his face. ER-85, ER-7. As the district court described it, the photograph "appears to show Howard's left cheekbone area as slightly red and raised, as compared with the right side of his face." ER-7. During his arrest and booking process, Mr. Howard did not complain about Detective

---

[3]   The officers do not explain who unbuckled Mr. Howard's seat belt.

Fye's excessive force and the resulting pain, but "kept [his] mouth shut" because he had previously experienced "extra charges" being added after he had complained about being "beat up by the cops." ER-22 ("I was very scared to say anything until I had all my charges.").

The arrest was captured on video. SER-54–55; ER-23. Mr. Howard's complaint alleged that "[t]he preserved video taken from the convenience store where the incident occurred will prove" that Detective Bailey stood by while "Ken Fye … caus[ed] me great bodily harm" (SER-54) and "will definitively show that there was absolutely no reason for Ken Fye's actions" (SER-55).[4]

Mr. Howard was charged with possessing a firearm as a prohibited person, possessing a controlled substance, and possessing drug paraphernalia,[5] and he was taken to the county jail. ER-72–75.

Detective Fye's actions caused Mr. Howard "great bodily harm" and required "medical and dental treatment." SER-54. Three weeks after the

---

[4]  As discussed below, Mr. Howard obtained the video footage and attempted to serve it on the parties by having it filed with the district court. SER-13; ER-23; *see infra* at 11. The video thumb drive was returned to the prison, which disposed of it, preventing Mr. Howard from relying on it at summary judgment. ER-23. Undersigned counsel has since obtained a copy of the video footage.

[5]  The officers recovered a handgun as well as methamphetamine and a methamphetamine pipe from the vehicle.

arrest, Mr. Howard reported extreme pain in three of his teeth and requested that they be removed. ER-148. He was seen by a dentist who extracted two teeth, and an X-Ray indicated a crack or break in at least one of Mr. Howard's teeth. ER-26, ER-40, ER-137, ER-157. Two days later, still in "a[ ]lot of pain," Mr. Howard requested that the third tooth be extracted. ER-160. He was merely given pain medication because the nurse practitioner misclassified his pain as "post teeth extraction pain." ER-161. Nine days later, Mr. Howard again submitted a request that his tooth be extracted, clarifying that the pain was caused by the arrest incident. He wrote, "when arrested I was slammed on my face and shoulder out of a van[,] it broke 3 teeth[,] and mes[sed] up my right shoulder real bad." ER-162. He explained that while two of the teeth had been removed, he was still "waitin[g] on" the third. *Id.* He also requested X-Rays of his shoulder. *Id.* The third tooth was finally removed four months later. ER-194–199.

At a medical appointment in June 2021 (roughly a month-and-a-half after the arrest), Mr. Howard again reported right shoulder pain. ER-167. A county jail medical employee wrote on a report that Mr. Howard had suffered a "fall at work pta," and that there was a "[h]istory of prior injury or pain in [the] same location."[6] ER-167. The medical employee's mention of a

---

[6]   It is unclear what "fall at work pta" refers to. It is clear, however, that prior to the appointment, Mr. Howard expressly attributed his shoulder pain to the force used against him during his arrest. ER-162.

"prior injury" may have referred to the injury caused by Detective Fye's use of force. ER-167.

Mr. Howard pleaded guilty to possessing a firearm as a prohibited person and was convicted on September 30, 2021. ER-226–227.

### B.    Procedural background

**1.**    Mr. Howard brought this action *pro se* on February 3, 2022, against Detectives Fye and Bailey, and he filed an application to proceed *in forma pauperis*. ER-258. Throughout this litigation, he has been incarcerated within the Nevada Department of Corrections. ER-226. The district court screened his amended complaint under the Prison Litigation Reform Act and the statute governing *in forma pauperis* proceedings and allowed him to proceed with a Fourth Amendment excessive force claim against Detectives Fye and Bailey. ER-258; 28 U.S.C. §§ 1915(e)(2), 1915A.

Detective Fye moved to dismiss for failure to state a claim, invoking qualified immunity. ER-259; SER-48–49. The district court denied the motion. SER-48–50. Taking the complaint's factual allegations as true, the court inferred that Mr. Howard "surrendered peacefully" and "posed no immediate threat," and it held that Detective Fye violated his clearly established right "when, absent any other justification of physical force, Fye pulled a surrendered, unarmed suspect out of the car and slammed his face

10

into the ground." SER-50 (citing *Hopkins v. Bonvicino*, 573 F.3d 752, 776-777 (9th Cir. 2009)).

    **2.**    The district court set a discovery deadline of March 17, 2023. ER-260 (Doc. 28). An attorney appeared on Mr. Howard's behalf in October 2022 but was granted leave to withdraw on January 25, 2023.[7] ER-261–263 (Docs. 26, 30, 50). The same day, once again without representation, Mr. Howard filed "Partial Discovery" with the district court on January 25. SER-46–47. The filing stated his intent to submit two videos of the arrest taken by the gas station's surveillance cameras. SER-46. It also contained his booking picture, indicating swelling on the side of his face and noting that three teeth had been removed. SER-47.

    Mr. Howard filed additional discovery with the court on February 13, 2023, containing the gas station convenience store surveillance videos and other materials. SER-13. The filing described the videos as "showing [there was] no time to get out of [the] van" as the officers "rushed" Mr. Howard "from all sides." SER-14. It also explained that the videos depicted Mr. Howard's "head bounce 2 times" on the pavement. SER-13. Noting that he had been under the defendants' surveillance when he was arrested, Mr. Howard observed that in the videos, the officers were "wearing Body gear" and a police vehicle was "park[ed] behind" him throughout the arrest. SER-14.

---

[7]   The attorney was not involved with any dispositive motions.

Given those facts, Mr. Howard questioned the defendants' failure to produce dash cam and bodycam footage which would have confirmed the truth of his account. SER-14.

The district court struck the filing from the docket because it had not ordered discovery documents to be filed, and it ordered that the thumb drive containing the videos be returned to Mr. Howard. SER-12. The prison received the thumb drive and "threw away the USB" drive, preventing Mr. Howard from sharing it later.[8] SER-4; ER-23 (noting that the "prison threw [the thumb drive] away after 10 days").

The defendants produced discovery including Detective Fye's police report, excerpts of Mr. Howard's medical records, certain images, such as Mr. Howard's booking photograph, certain footage that did not depict the arrest, such as Officer Hamm-Carl's vehicle footage, Detective Fye's affidavit, and Detective Bailey's declaration. ER-69; Fye Br. 27. The defendants did not produce the footage of the arrest taken by the gas station cameras, but instead attempted to have Mr. Howard "[a]dmit there is not a 'preserved video taken from the [gas station] convenience store' as alleged in your Amended Complaint." ER-221; *see infra* at 13-14.

---

[8]   Undersigned counsel has since recovered a copy of the video footage from Mr. Howard's public defender.

Mr. Howard submitted further discovery on March 6, 2023, including medical papers and an X-Ray of his broken tooth, and noting that the "USB of arrest" was "not sent" because "I'm in prison so I[ ha]ve no way" to convert the video to "still pictur[e]s." SER-6.

**3.** On January 26, 2023—the day after Mr. Howard's attorney was granted leave to withdraw from the case—Detective Fye served on Mr. Howard a set of requests for admission under Rule 36. ER-215–216.

The requests for admission asked Mr. Howard to contradict all the allegations in his verified amended complaint. The document requested that Mr. Howard admit, among other things, that "your face was not slammed on the asphalt by Detective Fye," that "Detective Fye did not cause you great bodily harm," that "you filed this lawsuit in retaliation to the officers [for previously] arresting you," that "you were under the influence of methamphetamine during your arrest," that "your booking photo … shows no injury," and that there was "no preserved video" taken from the gas station cameras. ER-220–223. That is, the requests asked Mr. Howard to recant his complaint.

There can be no doubt on this point. Indeed, Request No. 16 asked Mr. Howard to "[a]dmit that the allegations in your Amended Complaint related to Defendant Fye using excessive force *did not happen* and was [sic] fabricated to harass Defendants." ER-221 (emphasis added).

13

Mr. Howard immediately completed and mailed his responses in January, substantially denying the requested admissions. ER-30, ER-52; SER-4. But he inadvertently sent his responses to Lindsay L. Liddell, the attorney representing Detective Bailey. SER-4.

Detective Fye then moved to dismiss the action for failure to prosecute. ER-245–252; *see* Fed. R. Civ. P. 41(b). The motion averred that Detective Fye had not yet received responses from Mr. Howard to the discovery requests (requests for admission and production and interrogatories) that were mailed on January 26, 2023. ER-252. The motion did not describe the substance of the requests for admission—which form the basis of Detective Fye's rendition of the facts on this appeal.

Mr. Howard opposed the motion, explaining that the requests for admission and interrogatories were timely "answered in full" and "mailed back to Lindsay L. Liddell." SER-4. Again, this was inadvertent error by an incarcerated, *pro se* litigant.[9] Ms. Liddell stated (in a declaration attached to Detective Fye's reply) that she had not received the documents. ER-241.

Shortly after the motion to dismiss was filed, Mr. Howard "mailed to Mariah Northington"—Detective Fye's attorney—"all documents" pertain-

---

[9] Mr. Howard was not aware of the mistake until after this appeal was filed and he retained appellate counsel.

14

ing to discovery. SER-5; ER-30 ("In January 2023 I sent Defendants my answers to Fye's discovery request" and "for whatever the reason they claim they don't have them, so to please them and respect for the Court I sent everything again.").

Regarding the requests for production of documents, Mr. Howard explained that he had no new documents to produce. All the evidence that he intended to rely on to corroborate his sworn allegations was within the materials included in the defendants' disclosures, except for the gas station video footage. SER-4. Mr. Howard had attempted to share that footage, and by the time Detective Fye filed his motion to dismiss, the prison had thrown the thumb drive away. SER-4. Detective Fye received Mr. Howard's responses on April 11, 2023. ER-216.

**4.** Detective Fye moved for summary judgment on April 12, 2023, attaching the requests for admission as an exhibit. ER-53–68, ER-217–224. The motion claimed that, although Mr. Howard denied the requested admissions, the requests are "deemed admitted" because Detective Fye did not receive Mr. Howard's responses within 30 days. ER-57–59 ("Plaintiff has admitted that the allegations in this lawsuit did not happen…."). Detective Fye presented his own version of the facts and claimed qualified immunity based on that version. ER-54–59, ER-65–68. Thus, he claimed that he did

not violate Mr. Howard's Fourth Amendment rights where he "merely uti-
lized verbal commands and held onto Plaintiff's wrist," and where "Plaintiff
was not pulled out of the vehicle" and "was not thrown or slammed onto the
asphalt." ER-62.

The district court denied Detective Fye's motion for failure to prose-
cute, finding that Mr. Howard continually prosecuted his case by timely re-
sponding to Detective Fye's motion to dismiss, timely responding to Detec-
tive Fye's motion for summary judgment, participating in a settlement con-
ference, updating his address with the court, and filing motions for status
checks. ER-3–4. Addressing Detective Fye's summary judgment conten-
tions, it found there was a genuine dispute of material fact as to the type
and degree of force used, and as to the injuries Mr. Howard sustained. ER-
5–8. The district court held that "a reasonable juror could find that Howard
was unreasonably slammed onto the ground by Fye and sustained injuries
as a result of that use of force, in violation of his Fourth Amendment rights."
ER-8. The district court thus denied Detective Fye's motion for summary
judgment.[10]

After discussing and ruling on the motion to dismiss, the excessive
force claim, the claim of bystander liability against Detective Bailey, and

---

[10]  The district court granted Detective Bailey's motion for summary judg-
ment, finding him not liable under a theory of bystander liability. ER-9.
That ruling is not at issue in this appeal.

Detective Fye's qualified-immunity defense, the Court acknowledged that the parties made "several arguments" and cited several cases that were "not discussed" explicitly in the opinion. ER-10. It assured the parties that it "reviewed these arguments and cases" and "determine[d] that they do not warrant discussion as they do not affect the outcome of the motions before the Court." ER-10.

The district court thus rejected Detective Fye's argument that Mr. Howard admitted the falsity of his entire complaint, finding that the argument did "not warrant discussion." ER-10. And the district court similarly rejected the argument—already rejected at the motion-to-dismiss-stage—that Mr. Howard's right was not clearly established. ER-45; SER-49; *supra* at 10-11. Indeed, because Mr. Howard's evidence principally comes from his verified amended complaint, the facts at the motion-to-dismiss stage and summary-judgment stage were effectively the same. *Compare* SER-49 ("Accepting as true all well-pleaded facts in the [complaint], the Court can reasonably infer that every reasonable officer in Fye's position would have known that he was violating the Fourth Amendment right to be free from unreasonable seizure when, absent any other justification of physical force, Fye pulled a surrendered, unarmed suspect out of the car and slammed his face into the ground."), *with* ER-5 (considering those same allegations as evidence at summary judgment), ER-6–7 (finding that the other evidence in

17

the record was consistent with and corroborated those allegations, creating a genuine issue of fact), *and* ER-10 (reciting both prongs of the qualified-immunity standard and rejecting qualified immunity after "viewing the evidence in the light most favorable to [Mr.] Howard").

## SUMMARY OF ARGUMENT

**I.** The collateral order doctrine limits this Court's jurisdiction to resolving the pure legal issue of qualified immunity. As a result, the district court's fact-related rulings and rulings on issues other than qualified immunity are not subject to review, and this Court is required to construe all evidence in the light most favorable to Mr. Howard. Because Detective Fye baldly disregards these jurisdictional limits and refuses to present argument addressing the proper construction of the facts, the appeal should be dismissed for lack of jurisdiction. *See Estate of Anderson v. Marsh*, 985 F.3d 726, 731 (9th Cir. 2021).

**A.** Detective Fye elevates his narrative over Mr. Howard's and asks this Court to upend the district court's assessment of the evidence. But, on an interlocutory appeal, this Court may not weigh the evidence or question the district court's finding that there is a genuine dispute of fact.

**B.** Appellant's attempt to shoehorn a version of the facts wherein Mr. Howard conceded away everything material to his claim fails. The district court reviewed the argument and held that it was so unmeritorious that it

18

did not warrant discussion. That ruling is not reviewable on this interlocutory appeal. And, regardless, it was correct—and certainly not an abuse of discretion—for many reasons, including Ninth Circuit precedent holding that such requests for admission are abuses of Rule 36, the district court's awareness of Mr. Howard's diligence in answering the requests, his evident refusal to concede the facts in question, the leeway afforded to *pro se* incarcerated litigants in civil rights cases, the district court's discretion under Rule 36 to permit a longer answering period, and the lenient standard for withdrawing admissions. *See Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007).

In all, the Court lacks jurisdiction to consider interlocutory appeals in which a defendant denied qualified immunity simply attempts to peddle a version of the facts and evidence different from that accepted by the district court.

**II.** Even if the Court had jurisdiction, Detective Fye is not entitled to qualified immunity. To start, this issue is waived because Detective Fye refuses to engage with the district court's appreciation of the factual record. In any event, once the facts are construed in Mr. Howard's favor, it becomes abundantly clear that Detective Fye violated the Fourth Amendment by using excessive force.

**A.** Ample precedent within and without the Ninth Circuit confirms that deadly or intermediate force is excessive when used against a non-resisting suspect. Detective Fye used such force when he grabbed Mr. Howard by the wrist, ripped him out of the vehicle, and slammed his face into the pavement, breaking his teeth and injuring his shoulder.

**B.** The law is clearly established that Mr. Howard has the right to be free from such force. Not only are there numerous precedents involving similar fact patterns that conclude the officers' conduct violated the Fourth Amendment, but it is also obvious and a matter of common sense.

**C.** Detective Fye's arguments are meritless. Again, he principally argues the facts—which is outside the Court's jurisdiction and meritless in all events. He asserts that Mr. Howard's evidence is limited to allegations in his verified amended complaint, but those are as much evidence as any other declaration or testimony and, regardless, Mr. Howard identified photographs, video, and medical records that corroborate his sworn allegations.

\*    \*    \*

Mr. Howard rightfully prevailed before the district court on summary judgment. As a self-represented, incarcerated litigant, he pursued his claims with dedication and integrity, presenting sworn allegations of what occurred and identifying additional evidence that corroborates those allegations. He sought to introduce video footage of the arrest, which he will seek

to reintroduce on remand. Detective Fye, meanwhile, has depended on objectionable and unsavory procedural tactics to no avail. Detective Fye waited until Mr. Howard's attorney was permitted to withdraw, then the *next day* served Mr. Howard with requests for admission that no reasonable litigant would admit, and finally, attempted to use Rule 36's timing provision to make all evidence of excessive force—including the very footage of the arrest—go away. Respecting the narrow scope of this appeal, the Court should dismiss the appeal or affirm the district court's denial of qualified immunity.

## ARGUMENT

This appeal should be resolved in Mr. Howard's favor for two reasons. First, the Court cannot entertain Detective Fye's evidentiary challenges, and it must instead construe the facts in Mr. Howard's favor. Because Detective Fye has refused to argue that he is entitled to qualified immunity under the proper construction of the facts, the Court should dismiss this appeal. Second, even if the Court reaches the question of qualified immunity, there is no entitlement to qualified immunity here. Detective Fye used excessive force in violation of Mr. Howard's clearly established right.

I.  **THE COURT LACKS JURISDICTION TO CONSIDER THIS AP-PEAL, WHICH DEPENDS ENTIRELY ON DETECTIVE FYE'S EVIDENTIARY CHALLENGES.**

The Court does not have jurisdiction to review the district court's evidentiary rulings. Detective Fye's attempt to construe the record against Mr. Howard rather than in his favor fails as a matter of black-letter law. And his reliance on the requests for admission to frame the facts fails, too. The district court's rejection of that argument is unreviewable and, in any case, was the right result.

### A.  Detective Fye impermissibly construes the evidence against Mr. Howard.

Detective Fye's brief depends on his disputed version of the facts. But resolving fact disputes is improper on this interlocutory appeal. Rather, this Court must "adopt the view of any disputed facts most favorable to the plaintiff[]." *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1168 (9th Cir. 2013); *see also Nicholson v. City of Los Angeles*, 935 F.3d 685, 693 (9th Cir. 2019) ("Our review is limited to whether the denial of qualified immunity was appropriate by assuming that the version of the material facts asserted by the non-moving party is correct." (internal quotation marks omitted)).

This limit is jurisdictional. The final judgment rule normally prevents parties from bringing an appeal in the middle of a case. *Pauluk v. Savage*, 836 F.3d 1117, 1120 (9th Cir. 2016); 28 U.S.C. § 1291. There is an exception

22

for appeals of orders that reject a qualified-immunity defense. *Stevens v. Rose*, 298 F.3d 880, 881 (9th Cir. 2002). The scope of review for such appeals is "circumscribed," however. *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013). This Court may not decide "fact-related" disputes, even if they bear on the question of qualified immunity. *Estate of Anderson v. Marsh*, 985 F.3d 726, 731 (9th Cir. 2021) (quoting *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018)); *see also George*, 736 F.3d at 834 (holding that the issue whether a fact dispute is "genuine" is "categorically unreviewable").

The Court's jurisdiction is limited to resolving the "purely legal ... contention" that a defendant's conduct "did not violate the [Constitution]" and "did not violate clearly established law." *Estate of Anderson*, 985 F.3d at 731. And it can decide those questions only after "assuming that the version of the material facts asserted by the non-moving party is correct." *Nicholson*, 935 F.3d at 693 (quotation marks omitted). Put differently, the exception to the final judgment rule "works only if the appellant *concedes the facts* and seeks judgment on the law." *Adams v. Speers*, 473 F.3d 989, 991 (9th Cir. 2007) (emphasis added).

This Court has thus refused to entertain on interlocutory appeal "defenses that amount to a claim that a particular official 'didn't do it.'" *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009). In *Estate of Anderson*, for example, the Court held that it "lack[ed] jurisdiction over this appeal"

because the appellant challenged "the district court's determination that there is a genuine factual dispute as to whether" the plaintiff "appeared to reach for a weapon before [the officer] shot him." 985 F.3d at 733-734. Similarly, in *Foster v. City of Indio*, the Court lacked jurisdiction to consider whether the defendant "shot an unarmed suspect in the back without any provocation." 908 F.3d 1204, 1213 (9th Cir. 2018); *accord Pauluk*, 836 F.3d at 1121 ("[W]e cannot review [the defendants'] arguments that there was insufficient evidence" that a facility was unsafe, that the defendants acted with deliberate indifference, or that there was a causal relationship between the facility's conditions and an employee's death); *Serrano v. Sanders*, 2024 WL 2206344, at *3 (9th Cir. May 16, 2024) (holding that "we lack jurisdiction to consider" a challenge to the sufficiency of the evidence).

Framing fact-related arguments as legal arguments fares no better. The Supreme Court has observed that even though the question whether "there is a genuine issue of material fact" is "a question of law," it is unreviewable because it "sits near the law-fact divide." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). This Court has consistently rejected appellants' attempts to "characterize[e] their arguments as legal ones directed at the materiality of disputed facts." *Peck v. Montoya*, 51 F.4th 877, 886 (9th Cir. 2022). In *Peck*, the appellants claimed the district court erred by relying on certain facts to determine whether an arrestee "posed an immediate threat"

24

to the officers. The Court was clear: Ninth Circuit precedent "prevents us from considering" those arguments, and such arguments were "an attempt to evade" the "jurisdictional bar" recognized by the Supreme Court. *Id.* Similarly, the Court held in *George* that the defendants' argument, "[a]lthough couched in the language of materiality," "actually goes to the sufficiency of [the plaintiff's] evidence" because it aimed to show that she "could not 'prove at trial'" certain contentions. 736 F.3d at 834.

The "failure to present the facts in the light most favorable to Plaintiffs" is sufficient reason to dismiss an appeal. *Moore v. Garnand*, 2023 WL 6372972, at *1 (9th Cir. Sept. 29, 2023), *cert. denied*, 144 S. Ct. 1098 (2024); *see also Estate of Anderson*, 985 F.3d at 728 ("We … dismiss this appeal" because the appellant "challenges only the district court's conclusion that there is sufficient evidence to create a genuine dispute as to the factual question that will determine whether [the appellant's] use of force was reasonable."); *Maddox on behalf of D.M. v. City of Sandpoint*, 732 F. App'x 609, 610 (9th Cir. 2018) ("On appeal, defendants failed to present the facts in a light most favorable to the plaintiff, and accordingly have forfeited the legal argument that, based on those facts, they are entitled to qualified immunity.").

Here, the district court found that "genuine disputes of material fact exist" as to "what type and amount of force was used by Fye and thus

25

whether such force was excessive under the circumstances." ER-6. The district court properly construed the facts in the light most favorable to Mr. Howard. ER-4 (citing *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986)). It recounted the parties' conflicting versions of the facts, noting that none of the non-testimonial evidence—the patrol car video footage, Mr. Howard's booking photograph, and his medical record—could "directly corroborate" Detective Fye's contentions. ER-5. That evidence instead corroborated Mr. Howard's account. The photographs show "bruising and swelling" on the left side of his face, and the video shows him "grimac[ing] in pain" on the way to the detention facility. ER-7. Mr. Howard's medical records reveal that he had shoulder pain, a broken tooth, and was suffering extreme pain in his teeth that required extractions within weeks of the arrest. ER-7–8, ER-26, ER-40, ER-137, ER-148, ER-157, ER-160–162. Long before he filed this lawsuit, he attributed these injuries to being "slammed on [his] face and shoulder out of a van" while he was being "arrested." ER-162.

As it must, the district court accepted Mr. Howard's account for purposes of deciding the motion, finding that during Mr. Howard's "peaceful surrender" (ER-3), "Fye grabbed his wrist, pulled him from the vehicle, and slammed him and his face to the ground while his feet were still in the van tangled in his seatbelt" (ER-5). The record evidence supported an inference

26

that Detective Fye's use of force caused injuries to Mr. Howard's teeth and shoulder. ER-8.

Detective Fye must concede these facts in order to bring this appeal. *Adams*, 473 F.3d at 991. Instead, he demands that the Court "consider whether the evidence … is of sufficient caliber and quantity to support a jury verdict for the nonmovant." Fye Br. 31. Yet that is a question this Court "may not consider." *Advanced Bldg. & Fabrication, Inc. v. California Highway Patrol*, 918 F.3d 654, 657 (9th Cir. 2019) (the Court "may not consider … whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial" (quoting *Johnson v. Jones*, 515 U.S. at 307)).

Because Detective Fye does not "concede[] the facts" (*Adams*, 473 F.3d at 991) but rather "contests the district court's determination that there is a genuine factual dispute," this Court "must dismiss his appeal for lack of jurisdiction." *Estate of Anderson*, 985 F.3d at 734; *accord Moore*, 2023 WL 6372972, at *1; *Maddox*, 732 F. App'x at 610.

**B.** **The district court's ruling on the requests for admission is outside the scope of this appeal, and in any event, that ruling was well within its discretion.**

Detective Fye cannot change these clear jurisdictional rules by disagreeing with the district court's rejection of his requests-for-admission gambit. First, whether matters are admitted or withdrawn under Rule 36 is not

immediately appealable. Second, the district court was well within its discretion to find—and, indeed, correctly found—that the requested admissions were either not admitted or withdrawn. *See Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007) (Rule 36 rulings reviewed for abuse of discretion).

1.    Interlocutory rulings that are "based on grounds other than qualified immunity" are "unappealable." *White by White v. Pierce Cnty.*, 797 F.2d 812, 814 (9th Cir. 1986). The Rule 36 issue is separate from the "two questions" that comprise the qualified-immunity analysis (whether Detective Fye violated a constitutional right and whether that right was clearly established). *Sialoi v. City of San Diego*, 823 F.3d 1223, 1231 (9th Cir. 2016). And "[a] defendant cannot inject into an interlocutory appeal issues that are otherwise not immediately appealable." *Voskanyan v. Upchurch*, 2022 WL 4181664, at *2 (9th Cir. Sept. 13, 2022) (quoting *P.B. v. Koch*, 96 F.3d 1298, 1304 (9th Cir. 1996)).

Decisions determining what materials may be considered as evidence at summary judgment are not reviewable in an interlocutory qualified-immunity appeal. In *Koch*, the Court explained that "[t]he issue before the court is the district court's denial of qualified immunity," and it could not review the decision whether to strike an affidavit from the record. 96 F.3d

at 1305. And in *Voskanyan*, an appeal of a qualified-immunity denial precluded review of the district court's exclusion of certain medical records as inadmissible evidence. 2022 WL 4181664, at *2. The Court applied longstanding precedent establishing that "no interlocutory appeal of a pretrial ruling on the admissibility of evidence is available." *Id.* (quoting *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1342 (9th Cir. 1985)).

The district court's Rule 36 decision is not before this Court. Like a decision concluding that certain evidence is inadmissible, the decision that a matter has not been admitted under Rule 36(a) or that an admission has been withdrawn under Rule 36(b) is distinct from "the question whether … the defendants are entitled to qualified immunity as a matter of law." *Sialoi*, 823 F.3d at 1231. Detective Fye's challenge to the district court's ruling and his reliance on the admission requests should therefore be discarded.

**2.** Even if the Court could exercise jurisdiction over the issue, the district court's Rule 36 ruling was not an abuse of discretion.[11]

Rule 36 allows a party to serve on the opposing party a "request to admit" certain facts, the application of law to fact, opinions, and the genuineness of documents. Fed. R. Civ. P. 36(a). The rule is designed to "facilitate proof at trials" by "obviating the need to adduce testimony or documents as

---

[11] The standard of review further highlights the issue's separation from qualified immunity, which is reviewed *de novo*. *Adams*, 473 F.3d at 993.

to matters that are really not in controversy." *United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009); *Conlon*, 474 F.3d at 622 ("Admissions are sought, first, to facilitate proof with respect to issues that cannot be eliminated from the case and, second, to narrow the issues by eliminating those that can be.").

Paragraph (a)(3) provides that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Subsection (b) states that "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." The district court may do so if withdrawal would "promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b).

Although the rule is ordinarily used to clarify uncontroversial matters, courts and commentators have noticed that some litigants use it as a "tactical device to trap unwary *pro se* litigants." Colin E. Flora, *It's A Trap! The Ethical Dark Side of Requests for Admission*, 8 St. Mary's J. Legal Mal. & Ethics 2, 28 (2017) (quoting *Hungerford v. Greate Bay Casino Corp.*, 517

A.2d 498, 501 (N.J. Super. Ct. App. Div. 1986)). They do so by sending requests to admit matters that "no reasonable party would admit," and then relying on the "ticking time bomb" of the thirty-day deadline. *Id.* at 7, 32.

In recognition of this unfortunate practice, this Court has declared that Rule 36 "is not to be used in an effort to 'harass the other side' or in the hope that a party's adversary will simply concede essential elements." *Conlon*, 474 F.3d at 622. It then established a permissive standard for withdrawing admissions, especially where the admissions "practically eliminate any presentation of the merits of the case." *Id.* at 622.

The Eleventh Circuit has similarly explained that when a party uses requests for admissions with the "wild-eyed hope that the other side will fail to answer and therefore admit essential elements" despite having "already denied" those facts, the rule's "time-saving function ceases" and it "instead becomes a weapon, dragging out the litigation and wasting valuable resources." *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1268 (11th Cir. 2002). That court noted that the district court's decision to deem a core element of the case admitted "took the wind out of the defendants' sails and effectively ended the litigation." *Id.* at 1266. It held it was an "abuse of Rule 36" for the party to continue to serve the same admission requests "in the face of [the opposing party's] denials." *Id.* at 1268. The court also recognized that with-

31

drawing admissions in such circumstances is "not only appropriate but necessary," and that denying a motion to withdraw would be an abuse of discretion. *Id.* at 1266.

Here, the district court considered and denied Detective Fye's bid to have Mr. Howard admit that his entire verified complaint was false, finding that the argument did "not warrant discussion." ER-10; *see Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1185 (9th Cir. 2016) (upholding the district court's "implicit" grant of a motion to withdraw admissions, where the district court "never explicitly ruled on" the motion but "necessarily granted it" because it did not "rely on any of the requested admissions"). That ruling was correct—and certainly not an abuse of discretion—for many independent reasons.

*First*, Detective Fye's requests for admission constituted an unlawful abuse of the rule under *Conlon*. This Court was clear that Rule 36 is "not to be used" "in the hope that a party's adversary will simply concede essential elements." *Conlon*, 474 F.3d at 622. By requesting that Mr. Howard "[a]dmit that the allegations … related to Defendant Fye using excessive force *did not happen*," Detective Fye did exactly that. ER-221 (emphasis added); Fye Br. 10-11. That tactic was illegitimate and was appropriately rejected.

32

Worse, Detective Fye waited until the district court granted Mr. Howard's attorney's motion to withdraw from the case, and then sent the requests for admission to Mr. Howard the following day. He clearly did not use the rule for the purpose of eliminating the need to prove uncontroversial facts. Rather, it appears that he was betting that his incarcerated, *pro se* adversary would be unable to deliver responses within thirty days. That was a clear "abuse of Rule 36." *Perez*, 297 F.3d at 1268.

*Second*, "the failure to respond in a timely fashion does not require the court automatically to deem all matters admitted." *Petroff-Kline*, 557 F.3d at 293. Paragraph (a)(3) explicitly allows the Court to recognize a "longer time for responding" to requests for admission. This Court has accordingly held that "[a] trial judge has discretion to permit a late response to a request for admissions" and thus "relieve a party of apparent default." *French v. United States*, 416 F.2d 1149, 1152 (9th Cir. 1968); *accord Petroff-Kline*, 557 F.3d at 293 (noting the "understandable discretion vested in district courts to permit a longer time for a written answer to a request for admissions and to accept 'the filing of an answer that would otherwise be untimely'"); *Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1312 (8th Cir. 1983); *Moosman v. Joseph P. Blitz, Inc.*, 358 F.2d 686, 688 (2d Cir. 1966). Here, the district court "properly exercised its discretion in refusing to deem certain matters admitted." *Brown v. HomeStreet Bank*, 2021 WL 5277097,

at \*1 (9th Cir. Nov. 12, 2021) (upholding district court ruling where admission requests were "premature").

*Third*, courts are "generally more solicitous of the rights of *pro se* litigants" and have the authority to excuse "defective service." *Borzeka v. Heckler*, 739 F.2d 444, 448 n.2 (9th Cir. 1984). Here, Mr. Howard initially served Lindsay L. Liddell, Detective Bailey's attorney—likely because her name and address were listed at the end of the requests for admission (in the Certificate of Service). ER-224. He cured the error immediately upon discovering it. SER-5; ER-30, ER-52. Given his continual diligence and the timeliness of his filings throughout the rest of this litigation, *see* ER-3 and ER-256–266, the district court did not abuse its discretion by declining to deem the allegations admitted.

And *fourth*, even if the matters *were* deemed admitted, Mr. Howard's repeated denials of the matters sought for admission, in view of the undisputed fact that the defendants received his responses, may be construed as a motion to withdraw admissions under Rule 36(b). ER-30; SER-4. "[A] formal motion is not always required" to withdraw admissions, where the withdrawal request may be "imputed from a party's actions," "including the filing of a belated denial." *Petroff-Kline*, 557 F.3d at 293. Further, the obligation to liberally construe "filings of pro se litigants" applies with special force to "civil rights claims by inmates." *Blaisdell v. Frappiea*, 729 F.3d

34

1237, 1241 (9th Cir. 2013). "This rule relieves pro se litigants from the strict application of procedural rules." *Id.* Although Mr. Howard did not file a formal motion to withdraw, the district court did not abuse its discretion in withdrawing any deemed admissions, especially where no reasonable litigant would have admitted them.

## II. DETECTIVE FYE IS NOT ENTITLED TO QUALIFIED IMMUNITY.

This Court is jurisdictionally limited to resolving "two questions": first, whether Detective Fye "violated a constitutional right" given Mr. Howard's version of the facts, and second, whether that right was "clearly established at the time of the alleged violation." *Sialoi*, 823 F.3d at 1231.

Detective Fye's brief attempts to answer these questions without "construing the facts and drawing all inferences in favor of" Mr. Howard, as required. *Estate of Anderson*, 985 F.3d at 733. As discussed above, Detective Fye's total reliance on evidence-sufficiency claims deprives the Court of jurisdiction. *See, e.g.*, *id.* at 734; *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d at 1179 ("To the extent the district court relied upon disputed facts to deny … immunity, we lack jurisdiction to review that denial."); *supra* Part I. Only in the last paragraph of his brief does Detective Fye cursorily mention what would occur "even under Plaintiff's version of events"—he seeks refuge in the general principle that "some degree of physical coercion" can be permitted when making an arrest. Fye Br. 35. That is no argument, and

35

the issue is waived. *See Maldonado v. Morales*, 556 F.3d 1037, 1048 n.4 (9th Cir. 2009) ("Arguments made in passing and inadequately briefed are waived.").

Regardless, Detective Fye violated Mr. Howard's right to be free from excessive force when he slammed Mr. Howard's face into the pavement after Mr. Howard had peacefully surrendered and was complying with the arrest. That right was clearly established.

### A. Detective Fye used excessive force during the arrest in violation of the Fourth Amendment.

The prohibition of excessive force during an arrest is an application of the Fourth Amendment's prohibition of unreasonable seizures. *Cnty. of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 428 (2017). To determine whether the force used during an arrest is excessive, courts ask whether it was "justified" under the totality of the circumstances, *see Tennessee v. Garner*, 471 U.S. 1, 9 (1985), balancing the "nature and quality of the intrusion" against the government's interest in using such force, *Graham v. Connor*, 490 U.S. 386, 396 (1989). Courts examine factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. This Court also consid-

ers the "additional factor" of "the availability of alternative methods of capturing or subduing a suspect." *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005).

"To gauge the type and amount of force used," the Court assesses "both 'the risk of harm and the actual harm experienced.'" *Sabbe v. Washington Cnty. Bd. of Commissioners*, 84 F.4th 807, 821 (9th Cir. 2023). "The greater the risk of harm and the actual harm involved, the greater the governmental interest must be to justify the use of force." *Id.* Force is "quantified based on the circumstances of the situation" and can range from "minimal"—such as light "baton jabs used to control a crowd"—to "intermediate"—such as "baton blows to the legs"—to "extremely severe"—such as "slamming a suspect into [a] wall headfirst breaking his neck, throwing him facedown onto the floor, and punching him in the face." *Seidner v. de Vries*, 39 F.4th 591, 597 (9th Cir. 2022) (collecting cases). Deadly force is any force that "creates a substantial risk of causing death or serious bodily injury." *Sabbe*, 84 F.4th at 821.

Applying these standards, this Court has held that it is "clearly established that officers cannot use intermediate force when a suspect is restrained, has stopped resisting, and does not pose a threat." *Hyde v. City of Willcox*, 23 F.4th 863, 873 (9th Cir. 2022). And deadly force certainly cannot be used against a non-resisting suspect. *Cf. Zion v. Cnty. of Orange*, 874

37

F.3d 1072, 1076 (9th Cir. 2017) ("[T]he use of deadly force against a non-threatening suspect is unreasonable.").

In *Palmer v. Sanderson*, the Court denied qualified immunity to officers that "jerked" a compliant suspect "out of his car, pushed him against it," and handcuffed him tightly enough to cause bruising on his wrists. 9 F.3d 1433, 1434 (9th Cir. 1993). And in *Thompson v. Rahr*, the Court held that where an "unarmed felony suspect" is "under control," it is excessive force merely to put "a gun to the head" where the officers "easily could have handcuffed the suspect" instead. 885 F.3d 582, 587 (9th Cir. 2018).

Even where suspects did not comply with the arrest, this Court has held that the use of intermediate force was excessive. In *Mattos v. Agarano*, the officers encountered an "uncooperative" suspect in a vehicle that "actively resisted arrest" and displayed "agitated behavior" that was "potentially threatening." 661 F.3d 433, 444-446 (9th Cir. 2011). She presented a potential danger because while her "keys remained in the ignition of her car," she "could have attempted to drive away rapidly and recklessly, threatening the safety of bystanders or the officers." *Id.* But once the officer "grabbed [her] arm," and her "keys dropped to the car's floor," she "no longer posed even a potential threat to the officers' or others' safety." *Id.* The Court held that, taking the facts in the light most favorable to the arrestee, tasing

38

her (a use of intermediate force) was unconstitutionally excessive. *Id.* at 446.

Mr. Howard's case is far clearer. The district court found a genuine dispute of fact as to the "type" and "amount" of force used against him. ER-6. Because Detective Fye slammed Mr. Howard's head into the pavement, a reasonable jury could find that he used deadly force. *See, e.g.*, *Sallenger v. Oakes*, 473 F.3d 731, 740 (7th Cir. 2007) (holding that a single closed-fist "blow may constitute deadly force"); *Lewis v. Caraballo*, 98 F.4th 521, 532 (4th Cir. 2024) (similar, collecting cases). If not deadly, Detective Fye's action at least constituted intermediate force, and such force may not be used against a non-resisting arrestee. *See Hyde*, 23 F.4th at 873. The force used in Mr. Howard's case is more severe than in *Palmer*, where the suspect was "jerked … out of his car" and bruised on his wrists without justification. 9 F.3d at 1434. And Detective Fye's action was certainly a greater use of "force" than aiming a gun at a suspect. *Thompson*, 885 F.3d at 587.

The *Graham* factors do not show that the government's interests justified yanking Mr. Howard out of a vehicle and slamming his face into the pavement with enough power to crack his teeth. Although the "severity of the crime at issue"—vehicle theft in another county—is a felony, that carries little weight here. *Graham*, 490 U.S. at 396. That factor supports the use of force insofar as it indicates that the suspect poses a danger to the

officers or that there is a heightened need to apprehend a fleeing suspect. But where a suspect is complying with the arrest and his suspected felony offense does not suggest that he is "particularly dangerous," the "nature of the crime at issue provides little, if any, basis for the officers' use of physical force." *Smith*, 394 F.3d at 702-703; *see Bryan v. MacPherson*, 630 F.3d 805, 829 n.12 (9th Cir. 2010) ("[F]elonies not involving violence provide limited support for the use of significant force."); *Green v. City & Cnty. of San Francisco*, 751 F.3d 1039, 1050 (9th Cir. 2014) (suspected crime of "stolen vehicle" gave "no indication" of any threat to officers).

The second *Graham* factor—whether the suspect "poses an immediate threat to the safety of the officers"—is answered in the negative. 490 U.S. at 396. The jury could credit Mr. Howard's account that the handgun was already out of reach when the police arrived. Even on Detective Fye's narrative—which this Court lacks jurisdiction to entertain—Mr. Howard was at most "potentially threatening" as in *Mattos*, and as soon as the weapon "dropped to the car's floor," Mr. Howard raised his hands in surrender, and Detective Fye "grabbed [his] arm," he "no longer posed even a potential threat." 661 F.3d at 444; *see also Hyde*, 23 F.4th at 872 ("Our cases make it clear that the officers must reassess use of force in an evolving situation as the circumstances change."). The officers opened the door to a non-resisting

40

suspect who they concede was complying with their orders. They had no excuse to use intermediate, let alone deadly, force.

Moreover, unlike the arrestee in *Mattos*, Mr. Howard did not "actively resist[] arrest." 661 F.3d at 444. And he made no attempt to "evade arrest by flight." *Graham*, 490 U.S. at 396. The third *Graham* factor definitively favors Mr. Howard.

Finally, the "availability of alternative methods of capturing or subduing a suspect" further supports Mr. Howard's excessive-force claim. *Smith*, 394 F.3d at 703. In *Thompson*, the Court considered this factor and found that aiming a gun at the suspect's head was excessive force where the officers could have alternatively "handcuffed the suspect," or held the weapon "in the low-ready alternative" position. 885 F.3d at 590. Here too, Detective Fye could simply have handcuffed Mr. Howard, instructed him to exit the vehicle, or removed him less violently. There was no need to slam his face into the ground. *Cf. Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001) ("Gratuitous and completely unnecessary acts of violence by the police during a seizure violate the Fourth Amendment.").

### B. Mr. Howard's right to be free from Detective Fye's excessive force was clearly established.

"A constitutional right is 'clearly established' if 'every reasonable official would have understood that what he is doing violates that right' at the

41

time of his conduct." *Sampson v. Cnty. of Los Angeles by & through Los Angeles Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1018-1019 (9th Cir. 2020). A plaintiff can most easily show this by citing "controlling authority or a robust consensus of cases of persuasive authority" establishing the law for materially similar facts to the case at hand. *Waid v. Cnty. of Lyon*, 87 F.4th 383, 388 (9th Cir. 2023). Courts "do not require a case directly on point," however. *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). "[E]ven if there is no closely analogous case law, a right can be clearly established on the basis of 'common sense.'" *Lee v. Gregory*, 363 F.3d 931, 936 (9th Cir. 2004); *see also Wilk v. Neven*, 956 F.3d 1143, 1148 (9th Cir. 2020) ("'[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances'—i.e., even without a prior case that had 'fundamentally similar' or 'materially similar' facts").

Here, there is abundant authority establishing that non-resisting arrestees have a right to be free from gratuitously violent behavior like Detective Fye's action. And it is "common sense" that Detective Fye's use of force was excessive. *See Lee*, 363 F.3d at 936.

The cases cited above, and many more, clearly establish the right in question. In *Hyde*, the Court held that it was "clearly established" as of March 2019 that "officers cannot use intermediate force when a suspect is restrained, has stopped resisting, and does not pose a threat." *Hyde*, 23

F.4th at 873 (continued use of stun gun against suspect that ceased resisting); *see Hyde v. Willcox*, 2021 WL 267868, at *1 (D. Ariz. Jan. 15, 2021) (stating date of arrest). In *Palmer*, the Court found that "jerk[ing]" a suspect "out of his car," "push[ing] him against it," and applying overly tight handcuffs violated a "clearly established" right. 9 F.3d at 1435.[12] Those facts are materially identical to the facts here, except that the force used in *Palmer* was milder.

Likewise, *Thompson* held in 2018 that once police officers have an "unarmed felony suspect under control," even putting a gun to his head violated the Fourth Amendment. 885 F.3d at 587. As in that case, Mr. Howard was under Detective Fye's control and did not pose a threat. *See also Mattos*, 661 F.3d at 444-446 (holding that when officers "grabbed [the] arm" of an uncooperative but no longer threatening suspect, it was unreasonable to employ intermediate force).

---

[12] Detective Fye may argue that *Palmer* did not analyze the right in question at a sufficient level of particularity. *See Palmer*, 9 F.3d at 1436 (describing the clearly established right as the "right to be free from the use of excessive force during an arrest"). But regardless whether *Palmer*'s analysis of the clearly-established-law prong was correct in 1993, that case *itself* established the law and became "controlling authority" in this Circuit. *See Waid*, 87 F.4th at 388. By ruling on the *first* prong of qualified immunity, *Palmer* established that the officer's specific "use of force was excessive in violation of the Fourth Amendment." 9 F.3d at 1436.

There are many more examples within the Ninth Circuit. *See, e.g.*, *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1130 (9th Cir. 2017) (after a "large" suspect fled from police and was recovered, continued application of taser while the suspect "was being handcuffed" was excessive); *Rosenbaum v. City of San Jose*, --- F.4th ---, 2024 WL 3366493, at *5 (9th Cir. July 11, 2024) ("It was clearly established" in September 2019 "that an officer violates a suspect's right to be free from excessive force under the Fourth Amendment when the officer allows a police dog to continue biting the suspect after the suspect has fully surrendered and is under officer control."); *Jackson v. Dutra*, 2023 WL 2064543, at *1 (9th Cir. Feb. 17, 2023), *cert. denied*, 144 S. Ct. 1094 (2024) (excessive force violated clearly established right if "more force than necessary" was used when an actively resisting suspect "had been subdued"); *cf. Bell v. Williams*, 2024 WL 3449144, at *8 (9th Cir. July 18, 2024) (holding in the Fourteenth Amendment excessive-force context that "[i]f a detainee is complying with orders, then any amount of unnecessary force is objectively unreasonable, even if the detainee previously disobeyed orders.").

The other Circuits agree: *LaPlante v. City of Battle Creek, Michigan*, 30 F.4th 572, 583 (6th Cir. 2022) ("[T]akedown maneuvers are excessive when officers deal with a 'generally compliant' suspect, and … the police

may not use physical force against a subdued, non-resisting subject." (quoting *Smoak v. Hall*, 460 F.3d 768, 784 (6th Cir. 2006)); *id.* (takedown maneuvers are "excessive when a suspect surrenders to the police, does not offer resistance, and/or when the interaction happens in the presence of multiple officers"); *Wade v. Daniels*, 36 F.4th 1318, 1325 (11th Cir. 2022) ("[G]ratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."); *id.* (holding that a pistol-whip on a non-resisting suspect was excessive); *Bagley v. Guillen*, 90 F.4th 799, 803 (5th Cir. 2024) ("Once a suspect is 'subdued' and "no longer resisting, an officer's subsequent use of force is excessive."); *Holmes v. Vill. of Hoffman Est.*, 511 F.3d 673, 687 (7th Cir. 2007) ("No reasonable officer could have thought that it was permissible to slam [an unresisting suspect's] head against the car" or "continually grind his knee into the face of an unresisting arrestee."); *Alicea v. Thomas*, 815 F.3d 283, 292 (7th Cir. 2016) ("[U]sing a significant level of force on a non-resisting or a passively resisting individual constitutes excessive force."); *id.* (holding that "[c]ommanding a dog to attack a suspect who is already complying with orders" clearly violates the Fourth Amendment); *Quraishi v. St. Charles Cnty., Missouri*, 986 F.3d 831, 840 (8th Cir. 2021) ("[U]se of pepper spray to arrest an unarmed, compliant suspect can be excessive force.").

Finally, it is common sense and obvious that Detective Fye's act of ripping Mr. Howard from the vehicle and slamming his face onto the pavement was excessive. Taking Mr. Howard's facts as true, Detective Fye knew Mr. Howard from a prior interaction and "had a vendetta against him." SER-55. Mr. Howard never held a weapon, never posed a threat to the officers, and the officers saw him peacefully surrender before they opened the door. Any reasonable officer in Detective Fye's position would know that his conduct was unconstitutional.

### C. Detective Fye's arguments are meritless.

Detective Fye's arguments do not support his claim to qualified immunity.

*First*, all of his arguments are premised on the wrong view of the facts, and they may not be considered. *See supra* Part I.

Detective Fye's case law is inapposite because it is invoked to serve that wrong view of the facts. For example, he cites *Gregory v. County of Maui* for the proposition that an officer may use a certain level of force when confronting a suspect that had "assaulted" someone and was "acting in a bizarre manner." Fye Br. 21 (citing 523 F.3d 1103, 1106-1107 (9th Cir. 2008)). But Mr. Howard had not assaulted anyone and was undisputedly complying with the arrest.

46

Detective Fye then cites *Forrester v. City of San Diego* to defend the use of "pain compliance techniques" on protestors that were passively resisting arrest. Fye Br. 21 (citing 25 F.3d 804, 805 (9th Cir. 1994)). But no such techniques or other force were required to bring Mr. Howard into compliance because he was *not* resisting arrest, either actively or passively. And slamming his face into the ground far exceeds any force used against the protestors in *Forrester*.

*Saucier v. Katz* is no better a fit. Fye Br. 34 (citing 533 U.S. 194 (2001)). That case was about a demonstrator who approached the Vice President of the United States at a public event. When the demonstrator neared the fence that was "designed to separate the public" from the speakers, military police grabbed him and hurried him away from the scene. *Saucier*, 533 U.S. at 208. He felt a shove as they carried him away, but it did not "hurt" or cause injury. *Id.* Surely Detective Fye does not contend that the government's interest in slamming an arrestee into the pavement is commensurate with its interests in some forceful jostling in service of the "necessity to protect the Vice President." *Id.*

The remaining cited cases continue the trend of analogizing to Detective Fye's version of the facts, and they are distinguishable in any event. *See, e.g.*, *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 7 (2021) (officer briefly

47

"placed his knee on [the plaintiff] … near the knife" at the plaintiff's side, until other officers could remove the weapon from the plaintiff's reach).

*Second*, Detective Fye ignores the jurisdictional limits on this interlocutory appeal. He cites *Voigt v. Savell*, for the proposition that this Court must apply the same standard as the trial court. 70 F.3d 1552, 1564 (9th Cir. 1995). Fye Br. 14. It is true that this Court's review is *de novo*, but Detective Fye attempts to use the standard of review to smuggle in fact-related arguments that are impermissible in this procedural posture.

He invites the Court to analyze whether there is a "'genuine' dispute" of facts. Fye Br. 14. But as we have explained (*supra* Section I.A), this Court has repeatedly held that on an interlocutory appeal from a denial of qualified immunity, "[a]ny decision by the district court that the parties' evidence presents genuine issues of material fact is categorically unreviewable." *E.g.*, *Rosenbaum*, 2024 WL 3366493, at *3. Detective Fye asks the Court to "assess the proof." Fye Br. 15. But this Court may not review challenges to the "sufficiency of the evidence." *E.g.*, *DePaul Indus. v. Miller*, 14 F.4th 1021, 1026 (9th Cir. 2021); *compare id.*, *with* Fye Br. 31 (asking this Court to "consider whether the evidence presented in the affidavits is of sufficient caliber and quantity to support a jury verdict for the nonmovant").

Detective Fye alludes to a narrow exception where undisputable evidence like a video recording is among the record evidence being considered

48

at summary judgment and "blatantly contradict[s]" the plaintiff's account. Fye Br. at 14-15 (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). There is no such evidence here. To the contrary, the evidence *corroborates* Mr. Howard's account—from the video footage of him grimacing in the patrol vehicle, to the images of his reddened and swollen face, to his medical history of tooth and shoulder pain that—long before he filed this lawsuit—he ascribed to Detective Fye's conduct during the arrest. These factual matters belong to a jury.

*Third*, the above-mentioned corroborating facts also rebut Detective Fye's argument (at 15-16, 28-29) that Mr. Howard relies solely on the allegations in his verified amended complaint. *See Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) ("A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence."). Detective Fye criticizes Mr. Howard, who, again, proceeded before the district court *pro se*, for failing to cite his verified amended complaint when opposing summary judgment, and further accuses him of "wholly neglect[ing] his duty to participate in discovery." Fye Br. 29. But "courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." *Wilk*,

49

956 F.3d at 1147 (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)).

And Mr. Howard *did* participate actively in discovery, as the district court docket reflects. ER258-265. Indeed, he attempted to submit two gas station videos capturing the arrest as evidence that would further corroborate his allegations and disprove the officers' allegations. And when he saw that Detective Fye had moved to dismiss the case for failure to prosecute, he immediately served him with additional copies of his discovery responses. SER-4.

Additionally, Mr. Howard does not rely on "bare allegations." Fye Br. 27 & n.7. He specifically identified corroborating evidence in his booking photograph, patrol car footage, and medical records. It does not matter that the defendants, rather than Mr. Howard, initially served that discovery because it is "evidence creating a genuine issue of material fact." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007). Mr. Howard was entitled to introduce those materials as evidence with his opposition, and he did so. ER-20-52. He even included a police report, that the defendants did not attach to their motion, to show that he "complied" before force was used. ER-38. A non-movant "need not file contravening affidavits where the movants' own papers demonstrate the existence of a genuine issue of material fact." *Mut. Fund Invs., Inc. v. Putnam Mgmt. Co.*, 553 F.2d 620, 625 (9th

Cir. 1977). Here, Mr. Howard carried his burden by pointing to record evidence that substantiated the truth of his sworn allegations. Regardless, Detective Fye's challenge to the district court's finding that such evidence created a "genuine" issue of fact is "categorically unreviewable" in an interlocutory appeal. *George*, 736 F.3d at 834.

Finally, the defendants falsely claim that Mr. Howard did not make a showing that his right was clearly established. Fye Br. 32-33. But his opposition attached the excerpt of the district court ruling at the motion to dismiss stage finding that "every reasonable police officer or detective would have known that Fye's conduct violated a 'clearly established' constitutional right under the circumstances." ER-45. The facts and inferences supporting that ruling were identical to the ones that the district court found on summary judgment. In reviewing the motion to dismiss, the district court accepted the complaint's allegations as true. SER-50. And in reviewing the motion for summary judgment, the district court "considered [those allegations] as evidence" because they were sworn under penalty of perjury, and it held that they created a genuine dispute. ER-5-6; *compare* SER-49, *with* ER-5-7. Mr. Howard's summary-judgment opposition reasonably referenced the district court's earlier holding regarding his clearly established right.

## CONCLUSION

For the foregoing reasons, this appeal should be dismissed for lack of jurisdiction, or alternatively, the district court's denial of Detective Fye's motion for summary judgment should be affirmed.

Dated: July 31, 2024        Respectfully submitted,

/s/ *Paul W. Hughes*
PAUL W. HUGHES
SARAH P. HOGARTH
CONNOR J. SUOZZO
  *McDermott Will & Emery LLP*
  *500 North Capitol Street NW*
  *Washington, DC 20001*
  *(202) 756-8000*

*Counsel for Plaintiff-Appellee*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief:

(i)     complies with the type-volume limitation of Rule 32(a)(7) and Circuit Rule 32-1 because it contains 11,807 words, excluding the parts of the brief exempted by Rule 32(f); and

(ii)     complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Word for Microsoft 365 MSO and is set in New Century Schoolbook LT Std font in a size equivalent to 14 points or larger.

Dated: July 31, 2024                         */s/ Paul W. Hughes*

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2024, I electronically filed the foregoing brief with the Clerk of this Court using the CM/ECF system, and counsel for all parties will be served by the CM/ECF system.

Dated: July 31, 2024                         */s/ Paul W. Hughes*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-146

I am the attorney or self-represented party.

**This brief contains** 11,807 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [        ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Paul W. Hughes **Date** 07/31/24

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*